THE STATE OF OHIO, APPELLEE, *v.* THOMAS, APPELLANT.

212

(No. 11226—Decided
December 7, 1983.)

Mr. Lynn C. Slaby, prosecuting attorney, for appellee.
Mr. Robert C. Meeker, for appellant Gladys B. Thomas.

BAIRD, J. Defendant was indicted for the murder of Dennis Brown. At her trial, the jury fund her not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter. After she was sentenced, defendant brought the present appeal.

Defendant and Brown had lived together intermittently, in a common-law marriage, for several years. The relationship was a stormy one, including repeated periods of separation. In the mid-1970's, they moved to New York City, where Brown forced defendant into a life of prostitution to support both of them, as well as his drug habit. In 1978, they returned to Akron, and defendant eventually obtained a home of her own, using her welfare payments for rent. Brown again moved in with her. Although she periodically ejected him from the home, his promises to straighten out his life always induced her to take him back. His drug abuse continued, however, and he did not do any work beyond that required to maintain him on the relief rolls. Defendant testified to many instances of beatings by Brown throughout their life together, and other witnesses testified as to having observed her injuries. Defendant testified that she required hospital treatment after beatings on three occasions while she and Brown were in New York City, and she was hospitalized at least once as a result of such an incident in Akron.

Although she maintains that she loved Brown throughout, defendant recognized that the nature of their relationship was taking its toll on her emotional and mental well-being. She sought help from two professional counselors, but their efforts were unsuccessful. In August 1982, however, she began a course of treatment with one Dr. Roman, a psychiatrist, and she felt that this treatment was having some success.

In December 1982, Brown moved out of defendant's home, and commenced to live with another woman. In the ensuing weeks, defendant and Brown saw each other only sporadically, although each such incident resulted in at least a verbal quarrel. On January 19, 1983, after having made telephone arrangements, Brown came to defendant's home. As they sat in her living room, an argument ensued, during the course of which defendant got out a gun which she had brought into the room after learning that Brown was coming for a visit. As Brown approached her, she shot him. Brown was taken to a hospital, where emergency surgery was unsuccessful, and he died.

At her trial, defendant raised the affirmative defense of self-defense, and sought to introduce the testimony of Dr. Roman. The trial court excluded such evidence, thus forming the basis for defendant's sole contention on this appeal.

### Assignment of Error

"The trial court erred in excluding psychiatric testimony concerning appellant's mental condition and state of mind at the time of the shooting."

If she is to establish her defense of self-defense, defendant must show, by a preponderance of the evidence, that: (1) she was not at fault in creating the situation giving rise to the affray; (2) she had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of such force; and (3) she did not violate any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St. 2d 74 [12 O.O.3d 84], paragraph two of the syllabus.

The issue in this case involves the second element, and requires a distinction in the nature of the belief required between, on the one hand, a good faith belief that a particular defendant may actually have, and, on the other hand, a belief that a reasonable person in such circumstances would or should have. The law of Ohio clearly adopts the former test, rather than the latter. *State* v. *Sheets* (1926), 115 Ohio St. 308.

In other words, the test is a subjective one, relating to the particular defendant seeking to prove the defense:

"* * * it seems now to be finally determined that guilt is personal, and that the conduct of any individual is to be measured by that individual's equipment mentally and physically. He may act in self-defense, not only when a reasonable person would so act, but when one with the particular qualities that the individual himself has would so do. A nervous, timid, easily frightened individual is not measured by the same standard that a stronger, calmer, and braver man might be. * * *." *Nelson* v. *State* (1932), 42 Ohio App. 252, 254.

If this defendant's conduct is to be measured against this defendant's mental capacity, evidence bearing upon the condition of this defendant's mind at the time of the incident would appear to be relevant. The proposed testimony of Dr. Roman was that of a treating psychiatrist, who was prescribing a course of medication and other therapy for defendant. In his proffer, counsel for defendant recited the substance of Dr. Roman's testimony to be as follows:

"MR. MEEKER: He would have treated her from August 17th, 1982, right through the date of this event; that treatment occurred over several visits to his office; that he had her on medication concerning her general psychiatric condition; and, furthermore, that that condition will have included conclusions by him that, first of all, she had claustrophobia; second, she had a — what he would call a

paranoid personality, generally meaning that she saw herself through the eyes of another person in an extremely critical fashion rather than through her own eyes; that she had a continual state of depression; and that she saw everything most darkly and in a negative fashion, had a terrible self-image of herself; that she was not psychotic; that she had some indications of being a person with sexual masochist tendencies; and that she had a strange concept or an unusual concept as to — as to her love to this individual being tied in with humility, beatings, or other manners in which she was made to suffer; that she had an extremely flat affect in that her emotional responses were inappropriate; that she was withdrawn. Generally she was overly sensitive to being around the problem; that her personality was reflected through the continual wearing of dark glasses and suggesting that other people will see that she was a mental case or see that she was depressed.

"And, generally speaking, that if he could testify, Your Honor, I believe he would indicate that all those things that he observed about her and all the things that came out of the Cuyahoga Valley report would have been present on January 19th in her state of mind which I had intended to offer to indicate to — all the surrounding circumstances for Gladys Thomas at the time when the defense alleges at least that she acted in self-defense. So I appreciate that opportunity."

Though the relevance of much of the proposed testimony may be somewhat obscure, it is not difficult to perceive that a paranoid personality, who viewed everything negatively, might interpret the danger presented by an advancing individual differently than an ordinary person would interpret such danger. To that extent, some of the testimony would be an aid to the jury in regard to the determination it was required to make regarding this particular defendant's mind. It was,

therefore, relevant, and its entire exclusion was erroneous.

The state has suggested that the result in this case is controlled by the holding in *State* v. *Thomas* (1981), 66 Ohio St. 2d 518 [20 O.O.3d 424]. In that case it was held that a sociologist who had had no contact with the defendant was properly precluded from testifying as to the "battered wife syndrome." Though defendant Thomas may have been a wife, and she may have in fact been battered, there is no indication that the treating psychiatrist in this case proposed to testify as to any syndrome regarding those matters. The term "syndrome" suggests a group of signs and symptoms that occur together and characterize a disease (Webster's New International Dictionary, 2 Ed.), and the court in *Thomas, supra,* at 522, held that the battered wife syndrome is not sufficiently developed as a matter of commonly accepted scientific knowledge to warrant expert testimony. In so holding, the court did not suggest that testimony as to particular signs and symptoms in a particular individual would be inappropriate.

"* * * Finally, we believe the expert testimony offered here would tend to stereotype defendant, causing the jury to become prejudiced. It could decide the facts based on typical, and not the actual, facts." *State* v. *Thomas, supra,* at 521.

Since the testimony proffered here would have been based on actual rather than typical facts, and since it contained no suggestion that the signs and symptoms added up to any typical disease or condition, its admissibility is not affected by the holding in *Thomas, supra.*

Lastly, in regard to the question of whether the error was prejudicial, it is noted that Crim. R. 33(E)(3) provides that a judgment of conviction may not be reversed because of error in admission or rejection of evidence, unless the defendant was or may have been prejudiced thereby. It has already been noted that the evidence may well have aided the jury in the determination it was required to make. Further, it is noted that defendant testified at some length about beatings and other friction between Brown and herself that took place while they were living in New York. In cross-examination, the state placed some emphasis upon the remoteness in time of those events, thus drawing into question their relevance as to her state of mind at the time of the shooting, and rendering the proffered testimony as to her current state of mind particularly significant. Under all the circumstances, the error was prejudicial.

Accordingly, the assignment of error is sustained, the judgment is reversed, and the cause is remanded for a new trial.

*Judgment reversed
and cause remanded.*

MAHONEY, P.J., and GEORGE, J., concur.