517 A.2d 540

**COMMONWEALTH of Pennsylvania**

v.

**Carol STONEHOUSE, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1986.

Filed Sept. 23, 1986.

Reargument Denied Nov. 26, 1986.

Shelley Stark, Assistant Public Defender, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence imposed following a jury trial at which appellant was found guilty of third degree murder.

Appellant presents five issues for our determination: (1) whether the trial court erred by refusing to suppress certain statements made by appellant; (2) whether the testimony of Steve Owens constituted reversible error; (3) whether the Commonwealth failed to disprove self-defense; (4) whether trial counsel's stewardship of the defense was ineffective; (5) whether a remand for resentencing is required. On our review of the record and the briefs submitted by counsel, we find no merit in appellant's issues. Accordingly, we affirm judgment of sentence.

Appellant and the victim were City of Pittsburgh police officers. They met in March of 1980 and began dating six months later. The relationship between appellant and victim can best be described as tumultuous, as it was characterized by acts of harassment and violence.

On Wednesday, March 16, 1983, the night before the shooting, appellant drove to her girl friend's house. Along the way, the victim tailgaited appellant's car, bumping the rear of the car at traffic lights. Appellant, with her girl friend, drove to a bar where appellant met an old friend and neighbor, Steve Owens. When the victim arrived at the bar, words were exchanged between the victim and appellant. Appellant decided to leave, drove her friend home, and then proceeded to her apartment where she made herself ready for bed. Steve Owens, who was out walking his dog, stopped by appellant's house. They talked for about fifteen minutes and were then interrupted by the arrival of the victim.

The victim pounded and kicked the front door. After a few minutes of inaction appellant armed herself and unlocked the door. At that same moment, the victim kicked the door open and began to struggle with appellant for the gun. Steve Owens assisted appellant and the struggle ended with the victim exiting appellant's apartment. Sec-

onds later appellant heard the window of her car being broken. She immediately called the police. While waiting for the police to arrive, Steve Owens left to buy a pack of cigarettes.

When appellant was alone, the victim reappeared this time with his own gun. Upon entering, he backed appellant at gun point through the kitchen into the living room and then into the bedroom. While appellant and victim were in the bedroom the victim struck appellant with his gun and then kicked her. The direction of the confrontation changed, and appellant this time backed the victim through the living room into the kitchen. Near the kitchen, appellant was able to pick up her gun and point it at the victim. When they reached the back door, the victim ran onto the porch and then down the stairway to ground level.

Appellant stepped onto the porch, leaned over the railing, and saw the victim standing below. Although there was no witness corroboration, appellant claims the victim was holding a weapon. Appellant fired twice striking the victim in the back. The victim ran off, never firing his gun. With that, appellant called the police two more times. During the first call at 7:10 a.m. she said she had shot the victim, but his whereabouts were unknown and, in the second call at 7:16 a.m., she said the victim was "bleeding all over the place". Before the police arrived, Steve Owens returned and saw the victim lying dead on the ground next to his vehicle which was parked near appellant's apartment.

After the shooting a passerby heard appellant state, "He shot at me, I shot at him". Appellant asked the passerby to call the police and paramedics. When the police arrived, they found the victim lying on the sidewalk. As the police approached, appellant stated for a second time, "He shot at me, I shot at him". The door of appellant's apartment had to be forced open by the police because appellant was unable to open it. As the police entered, appellant stated a third time, "He shot at me, I shot at him". While they climbed the stairs to her apartment, appellant was given her

*Miranda* warnings. At the top of the stairs appellant appeared to have composed herself.

The police asked appellant for her weapon. An additional inquiry was made about her service revolver. Appellant was asked if she desired to have an attorney and she replied no. She was then asked if she wanted the police to contact her brother, another police officer, and she answered yes. The questioning then turned to what had happened. Appellant's response was the same as before: "He shot at me, I shot at him." Appellant tried to briefly describe the events of the shooting. She was taken to the Pittsburgh Public Safety Building at 8:25 a.m. where she was again given *Miranda* warnings and thereafter made a statement.

Appellant was tried before a jury and found guilty of third degree murder. Motions for a new trial and in arrest of judgment along with amended post-trial motions were denied. Appellant was then sentenced to a period of not less than seven and not more than fourteen years. A motion for reconsideration of sentence was filed and subsequently denied. Appellant filed her appeal from judgment of sentence and, as a result, the case is presently before us.

■ Appellant argues that the trial court erred by refusing to suppress her statements made at the scene of the homicide. She argues that due to her hysterical condition she had not been given an explicit *Miranda* waiver. Our Pennsylvania Supreme Court has said:

> This court has consistently refused to adhere to a *per se* rule of incapacity to waive constitutional rights based on mental or physical deficiencies. Rather, we look at all the circumstances to determine if a knowing and intelligent waiver was effected. (citations omitted).

*Commonwealth v. Hicks,* 466 Pa. 499, 505, 353 A.2d 803, 805 (1976); *see also Commonwealth v. Glover,* 488 Pa. 459, 412 A.2d 855 (1980). The Commonwealth need only to show by a preponderance of the evidence that a voluntary, knowing, and intelligent waiver of constitutional right was made. *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980).

■ From the record it is clear that appellant was given ample opportunity to hear as well as comprehend her *Miranda* warnings. "In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Goodwin,* 460 Pa. 516, 522–523, 333 A.2d 892, 895 (1975); *see also Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979). The police officers at the scene testified that appellant was calm when she reached her apartment. Further, when she was again asked if she wanted an attorney, she indicated not. "This issue is initially to be determined by the hearing court and where, as here, those findings have ample support in the record, they will be sustained upon appellate review." *Commonwealth v. Bundy,* 458 Pa. 240, 244, 328 A.2d 517, 520 (1974).

■ Appellant's next assignment of error is that the trial court abused its discretion by allowing the prosecution to cross-examine and impeach Steve Owens. We disagree. Although outright impeachment of one's own witness presents questions of unfairness, latitude must be given by allowing a party to cross-examine his witness "when it is believed that the interest of truth and justice so require." *Commonwealth v. Smith,* 511 Pa. 343, 513 A.2d 1371 (E.D.Pa.1986). *Commonwealth v. Waller,* 498 Pa. 33, 444 A.2d 653 (1982).

■ The record indicates the testimony of Steve Owens was incomplete due to his failure to remember details that occurred on the night of the homicide.

It is well settled a party may contradict his own witness by independent evidence showing facts to be different from those testified to by such witness. ... Such rule does not violate the general rule that one may not impeach his own witness because to contradict is not to impeach. Impeachment is directed to the credibility of the witness for the purpose of discrediting him. It ordinarily furnishes no factual evidence. Contradiction on

the other hand, is directed to the accuracy of testimony and supplies additional factual evidence to be considered along with such testimony. Such evidence as is relevant to the issues may not be excluded because it contradicts another witness called by the same party, whether such witness is friendly or hostile.

*Commonwealth v. Myrick,* 468 Pa. 155, 164, 360 A.2d 598, 602 (1976). Lastly, we agree with the Commonwealth that even if there were error, it was harmless. We find no significant variation in either the accounts of March 16 and 17, 1983, by either appellant or Steve Owens. Consequently, we find no possibility of reversal as a remedy.

█ Appellant next argues that the Commonwealth did not disprove appellant's claim of self-defense. Our scope in review in issues of this nature is well established.

In reviewing the sufficiency of the evidence, we must accept as true all the evidence, and the reasonable inferences therefrom, upon which the factfinder could have based its verdict and then ask whether that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to prove guilt beyond a reasonable doubt.

*Commonwealth v. Ritchie,* 324 Pa.Super. 557, 472 A.2d 220 (1984); *Commonwealth v. Parker,* 494 Pa. 196, 431 A.2d 216 (1981); *Commonwealth v. Stockard,* 489 Pa. 209, 413 A.2d 1088 (1980). The facts of this case indicate the victim was in retreat. At the time he was gunned down the victim did not present a threat of imminent danger of death or great bodily harm to the appellant. We are convinced the victim harassed, physically abused, and even threatened the life of appellant. However, at the time the victim was shot he was in the street, two flights of stairs down and away from appellant. The continued relationship between appellant and the victim further points to how unreasonable appellant's assertion of self-defense is. Appellant had ample time and opportunity to have the victim arrested. Even more damaging for appellant is the fact that she is a police officer. She was sworn to protect society from the very

same crime that she committed. Instead of using her training and experience with the law to solve her problem, she used unnecessary and unreasonable deadly force. Our Pennsylvania Supreme Court has clearly stated:

> To establish self-defense, the following elements must be shown: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the slayer must have reasonably believed that he was in imminent danger of death, great bodily harm or some felony, and that there was a necessity to kill in order to save himself therefrom; and, (3) the slayer must not have violated any duty of retreat to avoid the danger.

*Commonwealth v. Smith*, 484 Pa. 71, 76–7, 398 A.2d 948, 951 (1979). The trier of fact found appellant's actions to be unreasonable. We will not disturb that finding in the absence of evidence that contradicts their finding.

 Appellant argues that her trial counsel was ineffective. First, appellant contends her trial counsel failed to raise the "battered woman syndrome." We cannot agree. The "battered woman syndrome" has not been recognized in this Commonwealth as a viable defense in case of homicide.[1] "Clearly, counsel who fails to raise nonexistent defenses is not ineffective." *Commonwealth v. Unger*, 494 Pa. 592, 597, 432 A.2d 146, 148 (1980); *Commonwealth v. Skurkis*, 465 Pa. 257, 348 A.2d 894 (1975), *Commonwealth v. Boone*, 450 Pa. 357, 301 A.2d 699 (1973).

Appellant further argues her trial counsel was ineffective for failure to request certain jury instructions. The basis of appellant's argument is that the jury was denied the opportunity to hear instructions that would delineate more completely the difference between third degree murder and voluntary manslaughter. Moreover, appellant asserts that

---

1. This case is not to be construed as a position on the validity of the "battered woman syndrome." We only state that in the present evolution of the law it is not a recognized defense to homicide. Therefore, "we cannot impose upon trial counsel the qualities of a seer and fault him for not foreseeing . . ." *Commonwealth v. Triplett*, 476 Pa. 83, 89, 381 A.2d 877, 881 (1977).

the jury should have been instructed on the reasonableness of appellant's belief that the victim had placed her in imminent danger of death or bodily injury.

"A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations." *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 277, 389 A.2d 1113, 1122 (1978).

■■■ Our review of the record leads us to conclude the trial court properly instructed the jury. With regard to self-defense the trial court instructed:

Now, special rules apply in determining the availability of the defense of justification or of self-defense when deadly force was involved. Because the Commonwealth has the burden of disproving the defense of justification, you may find the defendant guilty only if you're satisfied beyond a reasonable doubt that she did not reasonably believe that the use of deadly force was then and there necessary to protect herself against death or serious bodily injury. In other words, if you're satisfied beyond a reasonable doubt that the defendant was not reasonable in her belief that the use of deadly force was then and there necessary to protect herself from the danger of death or serious bodily injury, then you may find the defendant guilty of one of the crimes charged. However, if the defendant believed it was necessary to use deadly force to protect herself from death or serious bodily injury but her belief was unreasonable, then the degree of homicide would not rise higher than voluntary manslaughter and, under those circumstances, if you so find, you may find her guilty of voluntary manslaughter.

Trial transcript, 1723-4. This instruction clearly states that the burden of disproving self-defense is on the Commonwealth. Appellant further argues trial counsel was ineffective for failing to request special instructions for voluntary manslaughter. Again, the record does not support appellant's argument. The instructions given were:

> Now, what is voluntary manslaughter? A person commits voluntary manslaughter when he intentionally kills another but, at the time of the killing, he is acting under sudden and intense passion resulting from serious provocation on the part of the person he killed. The serious provocation referred to is conduct sufficient to excite an intense passion in a reasonable person. And passion includes anger, terror, rage or resentment. However, if a reasonable cooling time elapses between the provocation and the killing, the provocation will not reduce murder to voluntary manslaughter if he intentionally or knowingly kills another person if, at the time he believes that it was necessary to do so to protect himself from death or serious bodily injury, but his belief was unreasonable.

Trial transcript, 1721–2. We find the instruction properly presents the elements of voluntary manslaughter. Also with regard to voluntary manslaughter, appellant contends her trial counsel was ineffective for failure to request an instruction for a finding of guilty of voluntary manslaughter "pursuant to its inherent mercy power...." Appellant cites the law in *Commonwealth v. Scaramuzzino*, 485 Pa. 513, 403 A.2d 82 (1979), as controlling:

> First, a trial court must give a voluntary manslaughter charge upon request where an accused is charged with murder. Second, the court's charge may include a statement of opinion that insufficient evidence exists to support a voluntary manslaughter charge if, in fact, the evidence is insufficient, and if two principle conditions are met, namely:
>
> > "(1) the trial court must fully inform the jury of its 'power' to return a verdict of manslaughter, whether supported by the evidence or not; and (2) the court must also instruct the jury that it is not bound by the court's comments concerning the evidence because it is the jury which is the sole finder of the facts"

(citations omitted), *Id.*, 485 Pa. at 516–18, 403 A.2d at 83–4. We disagree with appellant. The charge given the jury does not fall within the confines of *Scaramuzzino, supra.*

Specifically, the trial court did not make any statement of opinion regarding the insufficiency of the evidence for a finding of voluntary manslaughter. Consequently, we find it unnecessary for the trial court to have given a special charge.

Appellant contends that the sentence imposed by the trial court was excessive. Appellant's contention is not supported by the record. The trial court's considerations for imposing sentence, although brief, are in accordance with *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

Appellant's final issue concerned the constitutionality of the Mandatory Sentencing Act; 42 Pa.C.S. § 9712. This issue has been decided by both our Pennsylvania Supreme Court and most recently by the United States Supreme Court. Addressing the act, the Pennsylvania Court said:

The effect of section 9712 is merely to limit the discretion of the sentencing court in the selection of a minimum sentence where it is determined that the defendant visibly possessed a firearm during the commission of the crime. The maximum permissible term of imprisonment remains unaffected. The defendant has no cognizable right to leniency. Thus although a finding that this particular sentencing factor is present may have serious consequences for the defendant, we do not believe that a defendant subject to a section 9712 proceeding is in a position significantly distinguishable from that of other convicted defendants during the sentencing phase.

*Commonwealth v. Wright*, 508 Pa. 25, 40–1, 494 A.2d 354, 362 (1985), aff'd, —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The United States Supreme Court affirmed and commented:

We believe that the present case is controlled by *Patterson* [Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)], our most recent pronouncement on this subject, rather than by *Mullaney* [Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)]. As the Supreme Court of Pennsylvania ob-

served, the Pennsylvania legislature has expressly provided that visible possession of a firearm is not an element of the crimes enumerated in the mandatory sentencing statute, § 9712(b), but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt. Indeed, the elements of the enumerated offenses, like the maximum permissible penalties for those offenses, were established long before the Mandatory Minimum Sentencing Act was passed. While visible possession might well have been included as an element of the enumerated offenses, Pennsylvania chose not to redefine those offenses in order to so include it, and *Patterson* teaches that we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.

*Id.* at ——, 106 S.Ct. at 2416–7.

In light of the foregoing, appellant's final contention is devoid of merit.

Judgment of sentence affirmed.

POPOVICH, J., concurs in the result.