598 A.2d 963

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carol DILLON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1991.

Decided Oct. 31, 1991.

418

Manuel Grife, for appellant.

David Rudovsky, for amicus-Nat. Clearinghouse for the Defense of Battered Women.

Ronald Eisenberg, Chief, Appeals Div., Gaele McLaughlin Barthold, Deputy Dist. Atty., Maxine J. Stotland, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant, Carol Dillon, was found guilty of murder in the third degree and possession of an instrument of crime following a jury trial in the Court of Common Pleas of Philadelphia County. The trial court denied her post-trial motions and sentenced her to a prison term of not less than three years and no more than six years. Appellant appealed to the Superior Court, which affirmed 386 Pa.Super. 236, 562 A.2d 885. We granted allocatur. We now reverse on the basis of the trial court's exclusion of evidence presented by appellant as herein set forth.

Appellant was accused of stabbing and killing her husband, James Dillon, in their home on Saturday, June 7, 1986. Appellant admits to the fatal stabbing but asserts that she did so in self-defense after the decedent, who was drunk at the time, attacked her. At trial, appellant testified that the decedent had become violent when drinking and beaten her on numerous occasions (T.T., 11/4/87, pp. 7–8).

To support her testimony that the decedent became violent when drinking, appellant attempted to introduce the testimony of her son, Robert Weinert Jr., regarding the decedent's character for violence when intoxicated. According to the offer of proof, Weinert would have testified that "during the time he visited the home, he and his friends, James Dillon Sr.'s, would get in the basement at which time they would drink and smoke marijuana and inhale it and he would get drunk and mean and vicious." The trial court refused to admit Weinert's testimony because it considered the testimony irrelevant and incompetent. The trial court did, however, permit two Commonwealth witnesses to testify on rebuttal that decedent was normal and happy when drinking (T.T., 11/4/87, pp. 100, 113).

In a trial for homicide, where self-defense is asserted, the defendant may introduce evidence of the turbulent or dangerous character of the decedent. *Commonwealth v. Tiffany*, 121 Pa. 165, 15 A. 462 (1888). This type of character evidence is admissible on either of two grounds: 1) to corroborate the defendant's alleged knowledge of the victim's violent character in an effort to show that the defendant reasonably believed that her life was in danger; and/or 2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor. *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971). In the instant case, Weinert's testimony is admissible on both of these grounds.

Where this character evidence is proffered to corroborate the defendant's state of mind, the defendant must demonstrate knowledge of the decedent's character or reputation in order to establish a proper foundation for her claim that such knowledge put her in fear. *Commonwealth v. Stewart*, 483 Pa. 176, 180 n. 2, 394 A.2d 968, 970 n. 2 (1978); II Wigmore, Evidence § 246. As noted previously, appellant herein testified as to the numerous episodes of violence inflicted upon her by the decedent when he had

been drinking. From this, it is obvious that appellant knew of the decedent's character for violence when drinking.

 Having established her knowledge of the decedent's violent character, appellant was entitled to buttress her claim with evidence of the decedent's violent character. Appellant sought to introduce Weinert's testimony to explain the decedent's general character and reputation when drinking. At the very least, Weinert's testimony would have shown that the decedent was "mean and vicious" when drunk. Since there was evidence to show that the decedent had been drinking prior to the stabbing,[1] Weinert's testimony would be relevant to corroborate appellant's state of fear, and therefore, the testimony should have been admitted.

 In addition, Weinert's testimony should have been admitted on the issue of who was the aggressor. This Court, as far back as 1884, has permitted the introduction of character evidence to prove the decedent's violent propensities, where self-defense is asserted and where there is an issue as to who was the aggressor. *Alexander v. Commonwealth*, 105 Pa. 1, 9 (1884). "When the issue of self-defense is made in a trial for homicide, and thus a controversy arises *whether the deceased was the aggressor*, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action." I Wigmore, Evidence § 63 at 467.[2] In the instant case, appellant testified that the decedent was the aggressor and that he grabbed her by the arm, pushed her, punched her and told her he was going to kill her just prior to her stabbing him (T.T.,

1. Both the police officer at the scene and the appellant testified that the decedent appeared to have been drinking (T.T., 10/30/87, pp. 26–28 and 11/4/87 pp. 9, 35–36). The decedent's son also testified that the decedent had been drinking earlier in the day (T.T., 10/30/87, p. 92).

2. The defendant's knowledge of the decedent's character is unnecessary if the character evidence is offered to prove that the decedent, with his violent propensities, was the aggressor. I Wigmore, Evidence § 63 at 470–471.

11/4/87, p. 11). On cross examination, however, the Commonwealth tried to establish that appellant did not feel that her life was threatened and that she stabbed the decedent out of anger (T.T., 11/4/87, p. 59). Because there was a question as to who was the aggressor, appellant should have been permitted to show the decedent's violent propensities through Weinert's testimony.

Weinert's testimony was both relevant and competent evidence of the decedent's character for violence when drinking and of his being the aggressor. The trial court erred in excluding such evidence.[3] Appellant is entitled to a new trial.

Accordingly, we reverse the order of the Superior Court and remand to the Court of Common Pleas for further proceedings consistent with this opinion.

ZAPPALA, PAPADAKOS and CAPPY, JJ., join this majority opinion.

NIX, C.J., filed a concurring opinion joined by FLAHERTY and McDERMOTT, JJ.

FLAHERTY, J., filed a concurring opinion joined by NIX, C.J., and McDERMOTT, J.

CAPPY, J., filed a concurring opinion joined by LARSEN and PAPADAKOS, JJ.

NIX, Chief Justice, concurring.

Although I concur in the result reached by the majority today, I write separately to state my belief that evidence regarding the cumulative effects of wife-beating and general spousal abuse must be admissible to bear upon the "reasonableness" of the conduct by a party who claims self-defense to a charge of spousal homicide.

---

**3.** Incredibly, the trial court permitted the prosecution in rebuttal to present testimony that the decedent was normal and happy when drinking. This ruling is contradictory to the trial court's prior ruling that the appellant could not present testimony as to the vicious nature of the decedent when he was drinking.

Theorists have long espoused the concept of a separately defined claim of self-defense for the woman who is repeatedly brutalized by her husband. Advocates believe that the traditional theory of self-defense fails to account for either society's cultural expectations relating to gender or the specific problems inherent in battered women. Crocher, *Equality and Self–Defense*, 8 Harv. Women's L.J. 121, 128 (1985). *See also* Cipparone, *Defense of Battered Women*, 135 U.Pa.L.Rev. 427 (1987). These theorists agree that social and legal attitudes toward women have rendered them helpless in abusive situations.

> With respect to battered women in particular, society has condoned wife abuse, ignored or denied its existence, or blamed the wife. The legal system has reinforced this by not providing effective assistance and only selectively enforcing applicable laws. [T]hese "social misconceptions of battered women often blind the [jury] [sic] to the reasonableness of a battered woman's use of defensive force."

8 Harv.Women's L.J. at 130 (footnotes omitted).

To support the battered woman's argument in a proper case, expert testimony can be introduced to show how a battering relationship generates different perspectives of danger, imminence, and necessary force. *Id.* at 132. Expert testimony can also explain why the defendant stayed in the relationship, why she never called the police, or why she feared increased violence. The behavioral patterns that emerge in a study of battered women are collectively referred to as "learned helplessness." 135 U.Pa.L.Rev. at 432. This learned helplessness and its resulting feeling of inability to control the beatings lead to a process of victimization, rendering the woman psychologically paralyzed and unable to perceive the existence of any available options.

Clearly, society's historic refusal to acknowledge or interfere with instances of domestic violence has forced the victims into an impossible situation. As a result of traditionally being unable to obtain help, these victims, all too frequently, resort to killing their abuser, perceiving this to

be the only solution available to eliminate the potential for future abuse. However, traditional concepts of self-defense do not include this particular cycle of behavior, but instead focuses on the immediacy of the perceived harm rather than the systematic and cumulative damage inflicted on the abused individual. Tailoring self-defense claims to recognize the "battered woman syndrome" would thus be an effective means of finally providing legal protection for a woman forced to defend herself from further attack.

Section 505(a) of the Pennsylvania Crimes Code states:

*Use of force justifiable for protection of the person:* The use of force upon or toward another person is justifiable *when the actor believes* that such force is immediately necessary for the purpose of protecting himself against the unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a) (emphasis added).

Section 501 of the Code defines "belief" as meaning "reasonable belief" and this standard has been observed in the decisions of this Court. *Commonwealth v. White*, 492 Pa. 489, 424 A.2d 1296 (1981); *Commonwealth v. Webster*, 490 Pa. 322, 416 A.2d 491 (1980); *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977); *Commonwealth v. Nau;* 473 Pa. 1, 373 A.2d 449 (1977); *Commonwealth v. Light;* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Daniels*, 451 Pa. 163, 301 A.2d 841 (1973). Thus, while section 505(a) of the Crimes Code, in conjunction with section 501, sets forth an objective standard for determining whether the use of force was justified, i.e., reasonableness, this Court must necessarily examine the surrounding circumstances, as they impact upon the assailant, in order to make that determination. That is, we must ascertain whether the "reaction" was reasonable considering the circumstances known to the defendant. 18 Pa.C.S. § 505(a). *See also,* Comment, *The Battered Spouse Syndrome As A Defense To A Homicide Charge under The Pennsylvania Crimes Code,* 26 Villanova L.Rev. 123 (1980–1981).

Presently, the law of this Commonwealth does not recognize the battered woman syndrome as a separate and distinct defense to homicide, and I am not proposing that we do so now.[1] What I am suggesting is that, when presenting all relevant evidence in a proper analysis of justification under section 505(a), the defendant may offer evidence relating to the battered woman syndrome as additional probative information relating to the "reasonable-belief" requirement.

In *Commonwealth v. Watson*, 494 Pa. 467, 431 A.2d 949 (1981), this Court held that where

> there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of the killing include the defendant's familiarity with the victim's behavior in the past.

494 Pa. at 472, 431 A.2d at 952.

Further, in *Commonwealth v. Stewart*, 483 Pa. 176, 394 A.2d 968 (1978), this Court allowed the introduction of evidence of those factors existing prior to the homicide which bore on the defendant's emotional state of mind at the time of the homicide.

Our function as interpreters of the statutory expression of legislative will requires constraint on our part, but not to the point of closing our eyes to relevant evidence which in this case concerns a debilitating phenomenon, the effects of which have long been known but have only recently received a name and the appropriate recognition. It is significant to distinguish between instances when the Court exercises its interpretive judgment and those where the Court examines the propriety of legislatively expressed will. While this Court may not embark upon a process of judicial legislation, we are free to interpret that legislation upon

---

1. In *Commonwealth v. Stonehouse*, 521 Pa. 41, 555 A.2d 772 (1989), without commenting on the desirability of creating a separate Battered Wife Syndrome defense, this author dissented with the majority's recognition and implementation of such a defense, due solely to that issue being addressed, *sua sponte*, by the Court without being raised by the immediate parties to the action.

examination of the intent of the legislature. The interpretation suggested herein, that evidence of battered woman syndrome should be admitted evidence of reasonableness, reflects legislative intent in the area of self-defense.

I am not suggesting that once a defendant has established that she was a victim of the deceased's habitual emotional and/or physical abuse, the matter is resolved. I only recommend this as one factor to be considered in determining the reasonableness of the defendant's belief at the time of the homicide that deadly force was necessary.

Accordingly, I concur in the result.

FLAHERTY and McDERMOTT, JJ., join in this concurring opinion.

FLAHERTY, Justice, concurring.

I join the concurring opinion authored by Mr. Chief Justice Nix as I too see no reason to establish what the chief justice terms a "... separate and distinct defense to homicide." The law surrounding self-defense has developed adequately to accommodate the effect of long-term physical abuse (*Commonwealth v. Watson*, 494 Pa. 467, 472, 431 A.2d 949, 952 (1981)) and to go further gives me pause.

NIX, C.J., and McDERMOTT, J., join in this concurring opinion.

CAPPY, Justice, concurring.

I join the majority but write separately because the majority failed to address an issue which I believe is properly before us and should be resolved. The issue is whether the trial court erred in excluding expert testimony relating to the so-called "battered woman syndrome." [1] More specifically, the issue is whether we should permit expert testimony about the battered woman's syndrome in a self-

1. According to Lenore Walker, the recognized leading expert on the subject, a battered woman is a "woman who is repeatedly subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights." L.E. Walker, *The Battered Woman* (1979).

defense case. Although "[t]he majority of states which have examined the admissibility of battered women syndrome evidence have held it admissible," *State v. Hennum*, 441 N.W.2d 793, 798 (Minn.1989),[2] a majority of this court has yet to fully resolve this issue.

Mrs. Dillon testified at trial that her husband had physically assaulted her approximately eighteen to twenty times during their eighteen month marriage. She also testified that Mr. Dillon had repeatedly struck her in the twenty-four hour period prior to the killing. Mrs. Dillon stated that on the night before the killing, her husband had hit her head on the night table, causing her head to bleed.

On the evening of the killing, Mrs. Dillon testified that she had broken free from her husband while they were in the car and went into the house. As she was cleaning up in the kitchen, Mr. Dillon grabbed her by the arm and pushed her over by the counter. She was pinned by the refrigerator and was unable to break away from her husband. He

2. *See People v. Aris*, 215 Cal.App.3d 1178, 264 Cal.Rptr. 167 (1989); *State v. Scott*, 1989 WL 90613 (unreported, Del.Super.Ct.1989); *Terry v. State*, 467 So.2d 761 (Fla.Dist.Ct.App.1985); *Borders v. State*, 433 So.2d 1325 (Fla.Dist.Ct.App.1983); *Hawthorne v. State*, 408 So.2d 801 (Fla.Dist.Ct.App.1982); *Strong v. State*, 251 Ga. 540, 307 S.E.2d 912 (1983); *Smith v. State*, 247 Ga. 612, 277 S.E.2d 678 (1981); *People v. Minnis*, 118 Ill.App.3d 345, 74 Ill.Dec. 179, 455 N.E.2d 209 (1983); *State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986); *State v. Hundley*, 236 Kan. 461, 693 P.2d 475 (1985); *Commonwealth v. Craig*, 783 S.W.2d 387 (Ky.1990); *State v. Anaya*, 438 A.2d 892 (Me.1981); *May v. State*, 460 So.2d 778 (Miss.1984); *State v. Baker*, 120 N.H. 773, 424 A.2d 171 (1980); *State v. Norman*, 89 N.C.App. 384, 366 S.E.2d 586 (1988), *rev'd* 324 N.C. 253, 378 S.E.2d 8 (1989) (reversing on the grounds that the defendant did not act in self-defense, but not disallowing the evidence of the battered woman syndrome); *State v. Kelly*, 97 N.J. 178, 478 A.2d 364 (1984); *State v. Gallegos*, 104 N.M. 247, 719 P.2d 1268 (1986); *People v. Emick*, 103 A.D.2d 643, 481 N.Y.S.2d 552 (1984); *People v. Torres*, 128 Misc.2d 129, 488 N.Y.S.2d 358 (N.Y.Sup. Ct.1985); *State v. Leidholm*, 334 N.W.2d 811 (N.D.1983); *State v. Thomas*, 13 Ohio App.3d 211, 13 OBR 261, 468 N.E.2d 763 (1983); *State v. Hill*, 287 S.C. 398, 339 S.E.2d 121 (S.C.1986); *State v. Furlough*, 797 S.W.2d 631 (Tenn.Crim.App.1990); *Fielder v. State*, 756 S.W.2d 309 (Tex.Crim.App.1988); *State v. Kelly*, 102 Wash.2d 188, 685 P.2d 564 (1984); *State v. Allery*, 101 Wash.2d 591, 682 P.2d 312 (1984); *State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979); *State v. Felton*, 110 Wis.2d 485, 329 N.W.2d 161 (1983).

was punching her and kept telling her he was going to kill her. As she pleaded for him to stop, he kept repeating that he was going to kill her. She testified that she was scared he was going to kill her, because she had never seen him react like that. At that point, she reached into a drawer to pull something out and grabbed a knife, with which she stabbed him.

Ms. Zerbe, a cousin of Mrs. Dillon, testified that she was present in May of 1985 when Mr. Dillon started "hollering and screaming" and began "throwing punches" at Mrs. Dillon. Ms. Zerbe, in an attempt to protect her cousin, jumped in between the Dillons and was the recipient of the blows intended for Mrs. Dillon.

Mrs. Dillon's youngest son testified that on the night before the killing, his mother's head was bleeding from a gash which she received after an argument she had with the deceased. The son testified that he asked the deceased whether he had hit his mother, but the deceased merely told him to get some aspirin for her, never answering the question.

Detective Miller testified that he observed bruises on Mrs. Dillon's arms and legs on the day of the killing as well as red finger marks on her legs, "as if somebody had grabbed her by the leg and squeezed it." He also testified that on the night of the killing, he saw an injury on her scalp with visible dried blood.

A neighbor of the Dillons testified that shortly before the killing, the deceased grabbed Mrs. Dillon by the arm in the car, restraining her from leaving the vehicle. He testified that Mrs. Dillon broke free and ran up the stairs to the house.

At the trial of this matter, counsel for Mrs. Dillon requested that he be permitted to call Dr. Richard G. Lonsdorf, a clinical psychiatrist, to testify about the battered woman syndrome and its applicability to the facts of the case. The trial court refused to admit such testimony, relying on the Superior Court's ruling in *Commonwealth v.*

*Stonehouse,* 358 Pa.Super. 270, 517 A.2d 540 (1986), which held that "[t]he 'battered woman syndrome' has not been recognized in this Commonwealth as a viable defense in case [sic] of homicide." 358 Pa.Super. 270, 278, 517 A.2d 540, 544 (1986).

Following the trial of the case *sub judice,* this Court reversed the Superior Court decision in *Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989). In *Stonehouse,* we stated, in a plurality decision,[3] that:

[W]e believe that expert testimony regarding battered women is admissible as the basis for proving justification in the use of deadly force where the defendant has been shown to be a victim of psychological and physical abuse.

*Id.,* 521 Pa. at 61, 555 A.2d at 783.

As was discussed in *Stonehouse,* the myths concerning battered women are firmly entrenched in the minds of our culture. For example, many people believe that battered women are masochistic, weak and uneducated, that they can easily escape victimization by leaving their tormentors, and that the police would protect such women if only they would

**3.** Justice Larsen, joined by Justices Papadakos and Stout, wrote the opinion reversing the case on the grounds that counsel was ineffective for (1) failing to request a jury instruction that would require the jury to consider the cumulative effects of psychological and physical abuse when assessing what constitutes sufficient provocation to support a conviction for voluntary manslaughter; and (2) failing to introduce expert testimony on the issue of the battered woman syndrome to assist the jury in assessing appellant's claim that she had a reasonable belief that she faced a life-threatening situation when she fired her gun at the deceased.

Justice Zappala, joined by justice Flaherty, concurred with the holding that trial counsel was ineffective in failing to request an instruction that would have provided guidance to the jury as to the import of the history of the physical and psychological abuse in determining whether appellant reasonably believed that she was in danger of death or serious bodily injury. Justices Zappala and Flaherty, however, believed that the appellant had made it clear that the battered woman syndrome was not an issue in the case and thus did not believe it was necessary or appropriate to reach that issue.

Chief Justice Nix, joined by Justice McDermott, dissented, finding that the battered woman syndrome was not an issue in the case, per the statements of the parties at oral argument. Chief Justice Nix did not address any other issue in his dissenting opinion.

request help.[4] Although these beliefs are erroneous, many people still steadfastly hold to them. Thus, the necessity for and the importance of expert testimony is clear as it is helpful to the jury to assail these myths and to consider the evidence in a fair and impartial manner.

Evidence concerning battered women generally arises in two distinct types of murder cases. The first scenario is the "non-confrontational" type case in which an abused woman kills her husband during a period of time when he is not attacking her. Often, the killings occur while the husband is sleeping or otherwise incapacitated. *See, Commonwealth v. Grove*, 363 Pa.Super. 328, 526 A.2d 369, 373 (1987), *appeal denied*, 517 Pa. 630, 539 A.2d 810 (1987). That type of case is not before us here.

The battered woman issue also arises in "confrontational" killings, where the woman uses deadly force in response to an actual physical attack. Several jurisdictions have permitted testimony about the battered woman syndrome in cases involving a confrontational, self-defense posture. *See, e.g., Ibn–Tamas v. United States*, 407 A.2d 626 (D.C. 1979), appeal after remand, 455 A.2d 893 (D.C.1983); *Smith v. State*, 247 Ga. 612, 277 S.E.2d 678 (1981); *State v. Kelly*, 97 N.J. 178, 478 A.2d 364 (1984); *State v. Hennum*, 441 N.W.2d 793 (Minn.1989); *State v. Allery*, 101 Wash.2d. 591, 682 P.2d 312 (1984) and *State v. Anaya*, 438 A.2d 892 (Me.1981), appeal after remand, 456 A.2d 1255 (Me.1983).[5]

As stated, the question before this Court is whether we should permit expert testimony about the battered woman

---

**4.** Many studies conducted about police response to wife battering have established that the police often do not provide protection to women who call for help in domestic violence situations. *See generally,* Crocker, *The Meaning of Equality for Battered Women who Kill Men in Self–Defense,* 8 Harv. Women's L.J. 121, 129, n. 36 (1985); Comment, *The Battered Spouse Syndrome as a Defense to a Homicide Charge Under the Pennsylvania Crimes Code,* 26 Vill.L.Rev. 105, 105–07 (1980–81); Schneider, *Equal Rights To Trial for Women: Sex Bias in the Law of Self–Defense,* 15 Harv.C.R.–C.L.L.Rev. 623, 626 (1980).

**5.** In the vast majority of states addressing the battered woman syndrome testimony, the issue has arisen in a traditional self-defense posture and the clear majority of courts have allowed such testimony. *See* note 2, *supra.*

syndrome in a self-defense case. I believe that such testimony is appropriate for two reasons. First, the testimony is helpful as an aid to the jury to explain matters beyond common knowledge and experience. Second, the testimony is relevant to the defendant's state of mind.

First, it is clear that many jurors believe the myths about battered women and will often be unable to understand either why a woman failed to leave her husband or why she did not contact the police for assistance. These stereotypic beliefs underscore the importance of expert testimony to explain why women remain silent about and in denial of the abuse they have suffered. Without expert testimony, many jurors—who have little knowledge or understanding of the dynamics of batterers and their victims—find the tales of abuse and the reactions of those abused simply beyond their ken. One commentator thoughtfully notes:

> Testimony concerning the battered woman syndrome is of particular value to a defendant whose emotional patterns and social history conform to the syndrome because it effectively rebuts common jury misconceptions, such as the notion that she might have been able to extricate herself from the abusive relationship by some means short of killing her batterer.[6]

Thus, expert testimony is proper to educate the jury about the phenomenon of batterers and their spouses. As Justice Flaherty wrote for the majority in *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986):

> It has long been established that expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror. As stated in *Commonwealth v. Leslie*, 424 Pa. 331, 334, 227 A.2d 900, 903 (1967) (quoting *Commonwealth v. Nasuti*, 385 Pa. 436, 443, 123 A.2d 435, 438 (1956)), " 'Expert testimony is admissible in all cases, civil and criminal alike, when it

6. Comment, *Expert Testimony on Battered Woman Syndrome: Its Admissibility in Spousal Homicide Cases*, 19 Suffolk L.Rev. 877, 881–81 (1985).

involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience.' "

*Id.,* 512 Pa. at 442, 517 A.2d at 921.

The danger of not presenting expert testimony in these cases is that the jury may well be predisposed to judge the actions and reactions of a woman in a position that they cannot hope to comprehend. In my view, many jurors who know nothing about battered women simply find the tales of abuse too incredible to believe and thus, refuse to keep an open mind about the rest of the evidence, being convinced that "no one would have put up with such abuse therefore it must not be true." The testimony of the expert is intended to refute some of the common prejudices against battered women, thus permitting the jury to have a better ability to judge the evidence rationally, rather than judge it on the basis of an erroneous prejudice.[7] Once the jury is educated by an expert about the battered woman syndrome, they are in a much better position to assess the facts before them.[8]

This Court has consistently held that in self-defense cases, the jury must decide whether the acts of the defen-

---

**7.** It is indeed curious that our society instinctively blames the battered woman for not leaving or getting help rather than blame the man who abuses her. This prejudice, many believe, arose from this country's archaic laws that permitted wife beating and treated women as chattel. *See, e.g.,* Crocker, *The Meaning of Equality for Battered Women Who Kill Men In Self–Defense,* 8 Harv. Women's L.J. 121, 129, n. 35 (1985), in which the author notes that "[h]istorically, wife abuse has been culturally condoned and legally sanctioned." *See also, State v. Kelly,* 97 N.J. 178, 478 A.2d 364, 370 (1984); Schneider, *supra,* note 3, at 629: "Since the law has historically permitted woman abuse, judges and jurors do not see it as serious or life threatening." *See generally, U.S. Comm'n. on Civil Rts., Under the Rule of Thumb: Battered Women and the Administration of Justice 2* (1982). Since the law encouraged such misguided views, the law should now correct them. As this Court stated in *Commonwealth v. Watson,* 494 Pa. 467, 472, 431 A.2d 949, 951–52 (1981) "[a] woman whose husband has repeatedly subjected her to physical abuse does not, by choosing to maintain her family relationship with that husband and their children, consent to or assume the risk of further abuse."

**8.** Clearly, the Commonwealth would also be entitled to introduce any proper expert testimony in rebuttal.

dant are reasonable in *light of the way in which the defendant perceives the alleged danger. See, e.g., Murray v. Commonwealth,* 79 Pa. 311, 317 (1875); *Commonwealth v. Eberle,* 474 Pa. 548, 379 A.2d 90 (1977); and *Commonwealth v. Watson,* 494 Pa. 467, 431 A.2d 949 (1981). It is only when the jury understands *how* the defendant perceives the alleged danger are they able to make a rational judgment about the defendant's actions. In a self-defense case in which the defendant is a battered woman, rationally understanding the way in which she perceives danger may not be "within the range of ordinary training, knowledge, intelligence and experience" of the jury. *Seese,* 512 Pa. at 442, 517 A.2d at 921.

What may seem to be "reasonable fear of imminent bodily harm" to a person who is not the subject of abuse may not correspond with the reasonable fear of someone who has been living with an abusive husband.[9] As the Washington Supreme Court aptly noted in *State v. Allery,* 101 Wash.2d 591, 682 P.2d 312 (1984),

> We find that expert testimony explaining why a person suffering from the battered woman syndrome would not

**9.** Part of the very root of the problem with courts accepting the battered woman's syndrome is the so called "reasonable **man**" standard. How a reasonable man may perceive danger is quite possibly wholly different from how a reasonable **woman** may perceive danger. In Schneider, Jordan & Arguedas, *Representation of Women Who Defend Themselves in Response to Physical or Sexual Assaults,* 4 Nat'l J.Crim.Def. 141, 153 (1978), the authors note:

> Sex bias permeates the legal doctrine regarding the perception of imminent and lethal danger. The law assumes that both the attacker and the victim have approximately equal capacities. While a man is assumed to have the ability to perceive danger accurately and respond appropriately, a woman is viewed as responding hysterically and inappropriately to physical threat. However, certain factors relevant to women's experiences are not taken into account. For example, women are less likely to have had training or experience in hand-to-hand fighting. Socially imposed proscriptions inhibit their ability to fend off an attacker. The fact that women generally are of slighter build also gives a male assailant an advantage. All of these conditions will have an impact on the reasonableness of a woman's perception of an imminent and lethal threat to her life such as would justify the use of deadly force. These factors, however, have not usually been considered during the trial.

leave her mate, would not inform police or friends, and would fear increased aggression against herself would be helpful to a jury in understanding a phenomenon not within the competence of an ordinary lay person.

682 P.2d at 316.

The second reason I believe that expert testimony should be admissible is that it may be shown to be relevant to the defendant's state of mind. Admitting such testimony in self-defense cases is wholly consistent with our case law allowing evidence tending to show whether the defendant believed his life was in danger.

In *Commonwealth v. Michael Stewart*, 461 Pa. 274, 336 A.2d 282 (1975), we held that state of mind evidence is relevant to show that the defendant acted not out of malice, but out of fear. *See also, Commonwealth v. Scott*, 480 Pa. 50, 389 A.2d 79 (1978), in which we held it was error not to permit appellant's wife to testify about prior racial incidents in which they were victimized to show the jury that appellant was in a state of fear at the time of the shooting and that he acted in self defense, or at the very least, not out of malice. "Clearly appellant's state of mind was relevant in the instant case. The evidence he sought to present to the jury tended to establish that his actions were motivated by fear rather than the intent required to convict for murder." *Id.;* 480 Pa. at 56, 389 A.2d at 82. Additionally, in *Commonwealth v. Watson*, 494 Pa. 467, 431 A.2d 949 (1981) we stated "there is no reason why a finding of self-defense should not consider the mental state of a reasonable person who has suffered repeated previous beatings at the hands of the victim." 494 Pa. at 472–73, 431 A.2d at 952 (quoting Comment, 6 Pepperdine L.Rev. 213, 223 (1978)).

In self-defense cases, we have long permitted testimony about the defendant's knowledge of the victim's prior violent acts, *Commonwealth v. David Stewart*, 483 Pa. 176, 394 A.2d 968 (1978), as well as evidence of the history of abuse suffered at the hands of the victim, *Commonwealth v. Watson*, 494 Pa. 467, 431 A.2d 949 (1981). In *Commonwealth v. Grove*, 363 Pa.Super. 328, 526 A.2d 369, 373

(1987), *appeal denied,* 517 Pa. 630, 539 A.2d 810 (1987), the Superior Court aptly acknowledged that:

> Pennsylvania courts recognized that battered wives, viewing the facts through a filter of fear caused by past beatings, might reasonably perceive the approach of their *threatening but unarmed* husbands in the same way that another person would view the approach of a stranger with an upraised knife.

*Id.,* 363 Pa.Superior Ct. at 336, 526 A.2d at 373 (emphasis in original).[10]

The Superior Court in *Grove* refers to *Commonwealth v. Watson,* 494 Pa. 467, 431 A.2d 949 (1981), in which we stated that:

> In a case such as this, in which there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of a killing include the defendant's familiarity with the victim's behavior in the past.... '[T]here is no reason why a finding of self-defense should not consider the *mental state of a reasonable person who has suffered repeated previous beatings at the hands of the victim.*' [cites omitted]

*Id.,* 494 Pa. at 472–73, 431 A.2d at 949 (emphasis supplied).

The reason testimony about the deceased victim's prior behavior is admissible is that it is relevant to the state of mind of the defendant at the time the killing occurred. Psychiatric testimony may also be relevant to the defendant's state of mind at the time of the killing.

In prior cases, this Court and the Superior Court have permitted expert psychiatric testimony to be introduced in murder cases when such testimony is relevant to certain

**10.** In *Grove*, the Superior Court specifically disallowed evidence concerning specific violent acts of the victim as well as his general reputation for violence since there was no evidence of self-defense, and thus, the evidence would not have been relevant. Although the defendant alleged a twenty-two year history of being beaten by her husband, her husband was drunk and asleep when she shot him, tied him up and set him on fire. That issue is not before us in this case and we express no opinion thereon.

recognized defenses involving the defendant's state of mind. For example, psychiatric testimony is permitted to show that the defendant lacked the specific intent necessary for a first degree murder conviction. *See Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). Furthermore, we recognized that psychiatric testimony may be relevant to show that a killing was committed in the heat of passion in *Commonwealth v. McCusker,* 448 Pa. 382, 391, 292 A.2d 286, 290–91 (1972) where we stated:

> Applying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear [that] any evidence—lay or psychiatric—pertinent to that defense should be admissible.

The same rationale is applicable in a self-defense case. In *Commonwealth v. Black,* 474 Pa. 47, 50, 376 A.2d 627, 629 (1977), then Justice, now Chief Justice Nix, writing for the majority, stated that "we agree that the proffered evidence [psychiatric testimony] would have been relevant to a claim of self-defense...." In *Black,* however, the facts did not support the self-defense claim and thus, we found that the exclusion of the proffered testimony did not require reversal.[11]

In the plurality decision of *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974), Justice Pomeroy (joined by Justice Jones, with Justices Eagen and O'Brien concurring in result) writing in favor of affirmance, stated that there were two elements to self-defense:

> First, the defendant in fact must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. [cite omitted] The first element is entirely subjective; the second, clearly objective.

---

**11.** The Superior Court has also held that psychiatric testimony is admissible in a self-defense case. "[I]t is clear that psychiatric testimony is admissible to prove the defendant's subjective belief that he is in danger of imminent death or serious bodily injury...." *Commonwealth v. McCloud,* 309 Pa.Super. 316, 319, 455 A.2d 177, 179 (1983).

*Id.*, 458 Pa. at 334, 326 A.2d at 292. Justice Pomeroy went on to state that "psychiatric testimony should be admissible as to ... the subjective element of the defendant's state of mind at the time of the occurrence." *Id.*[12]

As the cases cited herein demonstrate, permitting expert testimony in a case such a this is in complete accord with our existing case law. I dó not believe we would be creating a new "battered woman's defense" by permitting expert testimony in the case *sub judice*, nor would I suggest that we attempt to do so here. The defense asserted is self-defense. The testimony of the expert is relevant to the defendant's state of mind concerning self-defense and is helpful to the jury in evaluating the testimony.

In a self-defense case in which the defendant alleges that she was battered by the victim and proffers competent expert testimony concerning the battered woman's syndrome, I believe that an expert may testify about the

**12.** The dissent in *Light*, by Justice Manderino, joined by Justice Roberts and (now Chief) Justice Nix, agreed that psychiatric testimony should be admissible in self-defense cases. However, the dissenting opinion remarked that the psychiatric testimony was also relevant to the reasonableness of the defendant's belief that the defendant was in imminent danger, and noted the difficulty in labeling the first part of self defense as "entirely subjective" and the second part as "clearly objective." The dissent correctly stated the function of the jury in a self-defense case involving expert psychiatric testimony:

> It is for the jury to decide whether the defendant's belief was reasonable. Such a determination must be based on the facts and circumstances *as the defendant perceived them*. This they were unable to do because psychiatric testimony concerning the defendant's state of mind and its effect on his perception of the facts and circumstances that immediately preceded the shooting was withheld from the jury (emphasis in original).

*Id.* 428 Pa. at 341, 326 A.2d at 295.

The dissent reflects a position in accordance with the view expressed by the Section 3.04(1) of the Model Penal Code, many states, and several commentators. "Because the law of self-defense has moved towards a subjective approach that takes surrounding circumstances into account, the reasonable man is more often placed in the context of the defendant's social reality." Donovan & Wildman, *Is the Reasonable Man Obsolete? Critical Perspective on Self–Defense and Provocation*, 14 Loy.L.A.L.Rev. 435, 445 (1981). "[T]he standard of reasonableness applied in any jurisdiction is an amalgam of both subjective and objective factors...." Crocker, *supra*, note 4, at 132, n. 52; and *see* Schneider, Jordan & Arguedas, *supra*, note 9, at 155, n. 53.

elements of the syndrome and whether he or she believes that the defendant suffered from such a syndrome at the time of the act or acts in question. Additionally, as part of the syndrome, the expert should be able to testify about the perceptions of battered women generally when they are faced with violence by their husbands.[13] The testimony is also important because it may establish that "among battered women who kill, the final incident that precipitates the killing is viewed by the battered woman as 'more severe and more life-threatening than prior incidents.'" *Stonehouse*, 521 Pa. at 64, 555 A.2d at 784 (quoting from Schneider, *supra*, note 3, at 634). Thus, the testimony, while clearly relevant to the honesty of a defendant's belief, is *uniquely* relevant to the reasonableness of her belief at the moment she killed him. In the case before us, Ms. Dillon testified as follows:

> I asked him, "Please stop; don't hit me anymore." That just didn't do anything. And he kept repeating, "I am going to kill you." At this point I was scared. I thought he was going to kill me, because I have never seen him react like this.

Although we need not decide whether, as a general rule, expert testimony is relevant to the reasonableness of a defendant's state of mind, in the case of self-defense involving the battered woman's syndrome, it clearly is relevant.[14]

I believe it is furthermore apparent that if psychiatric testimony is relevant to the issue of self defense, it is

---

**13.** I strongly object, however, to any expert testimony that attempts to explain any discrepancies in appellant's statements to the police. Such testimony would invade the province of the jury and would be at odds with well-established case law. The credibility of a witness is not the proper subject of expert testimony. "It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility." *Seese*, 512 Pa. at 443, 517 A.2d at 922. *Accord, Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988).

**14.** As this Court stated in *Watson*, "in determining the reasonableness of a defendant's belief [in imminent danger of death or serious bodily injury], we must also take into account any changes in her husband's behavior towards her immediately before the killing." 494 Pa. at 473, 431 A.2d at 952. *See also Stonehouse, id.,* n. 11.

relevant to the issue of an "imperfect self defense," namely, whether the individual who committed the killing honestly believed that the circumstance were such that they justified the killing, although such belief is unreasonable. *See* 18 Pa.C.S. § 2503(b); *Commonwealth v. Cain*, 484 Pa. 240, 398 A.2d 1359 (1979).

Reviewing the testimony of the witnesses as a whole in the case *sub judice*, I believe that the appellant introduced evidence establishing a "pattern of battering," *Stonehouse*, 521 Pa. at 66, 555 A.2d at 785, sufficient to enable her to introduce expert testimony on the battered woman syndrome as initially recognized in *Stonehouse*.[15]

For the reasons recited, I believe that in addition to the remand as ordered by the majority, this case also should be remanded with the instruction that the trial court permit the appellant to introduce expert testimony about the battered woman syndrome.

LARSEN and PAPADAKOS, JJ., join in this concurring opinion.

---

**15.** The opinion of the Superior Court in the case *sub judice* displays a marked disregard for the holding in *Stonehouse*. The court below stated that "expert testimony is appropriate 'where *uncontradicted* testimony reveals that the defendant was a victim of such abuse.'" (emphasis supplied). The Superior Court then stated that "whether appellant ... was a battered woman was sharply disputed...." What the Superior Court has done is to paraphrase the issue as set forth in *Stonehouse* and transform it into a holding. There is absolutely no requirement that the testimony concerning the battering of the defendant be uncontroverted. In fact, in the majority of cases, whether or not the defendant was battered would be an issue subject to conflicting testimony.

What constitutes a "pattern of battering" is a question not before us and one which would be suitable for experts on the battered woman's syndrome to answer—not members of the judiciary.