BECK, Judge.
We address inter alia the scope of the Confidential Communications to Clergymen provision of 42 Pa.C.S.A. § 5943.
Appellee David Stewart (Stewart), was charged with the murder of Reverend Leo Heineman (the victim). Prior to trial, Stewart served a subpoena duces tecum on the Roman Catholic Diocese of Allentown (the Diocese), seeking a variety of documents he claimed were relevant to his defense. The Diocese opposed the requests based on the clergymen privilege and constitutional rights of religious freedom. The trial court ordered that the documents be produced for an in camera inspection to determine whether they could be withheld from discovery as privileged material. The Diocese appealed the trial court’s order and we now affirm.
In a homicide trial, a defendant asserting self-defense may introduce evidence of the violent and dangerous character of the victim in an effort to establish that the defendant reasonably believed that his life was in danger and the victim’s death was justified. See Commonwealth v. Dillon, 528 Pa. 417, 598 A.2d 963 (1991). Where the evidence sought to be admitted is a prior act of violence not reduced to a criminal conviction, the law requires that the violent act or *265 acts be known to the defendant at the time of the homicide.[1] See Id. (victim’s prior acts of beating defendant admissible to corroborate defendant’s knowledge of victim’s violent character); Commonwealth v. Ignatavich, 333 Pa.Super. 617, 482 A.2d 1044 (1984) (where appellant was not aware of victim’s prior arrest for assault, evidence of assault inadmissible). The incidents of violence cannot be remote in time and must be indicative of the victim’s aggressive and dangerous behavior. See Commonwealth v. Beck, 485 Pa. 475, 402 A.2d 1371 (1979) (three year old assault conviction probative and admissible); Commonwealth v. Quarles, 310 Pa.Super. 74, 456 A.2d 188 (1983) (twenty two year old conviction inadmissible). See also Amos, supra (assault conviction more probative than larceny conviction).
Pursuant to the subpoena,, Stewart sought the following items of discovery:
1. All reports, letters and other documents pertaining to any allegations of misconduct or other disciplinary action regarding Rev. Leo Heineman.
2. All records, whether maintained directly by the Diocese of Allentown or by Saint Mauritius Church, Ashland, pertaining to Mardell Stewart, formerly known as Mardell Eames.
3. Copies of any Reports pertaining to any sexual misconduct by Rev. Leo Heineman.
4. Copies of all personal records, correspondence, diaries, or similar documents maintained by Rev. Leo Heineman, whether such documents were maintained at Saint Mauritis Church, or any other location.
5. Copies of any reports pertaining to any alcohol or other substance abuse or treatment by Rev. Leo Heineman.
*266 6. Copies of W-2 or similar forms showing compensation paid by the Diocese of Allentown to Rev. Leo Heineman from 1986 to 1989.
The Diocese agreed to produce documents requested in items # 2 and # 6 but filed a motion to quash the subpoena with respect to the other items. In support of the motion, the Diocese offered the affidavit of the Reverend Monsignor Nev-in J. Klinger, Chancellor of the Diocese. Production of the documents was opposed on the following bases:
1. The church is hierarchical, with Canons promulgated by its highest governing authority, and two Canons require keeping a secret archive;
2. Archive documents are privileged under 42 Pa.C.S.A. § 5943 and the Pennsylvania Rules of Civil Procedure; and
3. The Canons are religious practices protected by the religious freedom guarantees of the United States and Pennsylvania Constitutions.
Preliminarily, we note that the Diocese did not object to the production of the documents on relevancy grounds, i.e., that even if produced, the documents would be inadmissible since they do not address specific acts of violence and do not pertain to acts of which appellee Stewart has personal knowledge. Indeed, the issue of relevance appears not to have, been raised by the Diocese at all and, therefore, cannot be the basis for our reversing the order of the trial court. Compare Butler v. DeLuca, 329 Pa.Super. 383, 478 A.2d 840, 843 (1984) (reviewing court may affirm trial court on any ground) with Wiegand v. Wiegand, 461 Pa. 482, 337 A.2d 256, 257 (1975) (Superior Court may not consider unpresented issue and must resolve appeal on the basis of issues raised by the parties). We are mindful, however, that the trial judge stated in his opinion that he intends to inspect the documents for relevance as well as privilege. Trial Ct.Op. at 7.
We now address the issues that the Diocese preserved for our review. In support of its motion to quash the subpoena, the Diocese relied heavily on 42 Pa.C.S.A. § 5943, Confidential Communications to Clergymen. The statute provides that no *267 clergyman shall be compelled to disclose information he has acquired while in the course of his duties.[2] The Diocese’s argument, as recited in Reverend Monsignor Klingers affidavit, is as follows:
The bishop fulfills [his] duties in conjunction with his priests, over whom he exercises hierarchical authority. Thus, a bishop maintains a special relationship with his priests. He provides primary support and guidance for them concerning their spiritual lives and the faithful performance of their mission within the Church. Free, frank and confidential communication between the bishop and his priests must be protected so that the bishop can fulfill his obligations to his priests and the faithful under the prescriptions of Canon Law. A bishop must be able to candidly discuss with a priest his character, talents, spiritual life, health, and pastoral or familial problems and concerns in order to be able to assign the priest to compatible duties and to provide him with appropriate guidance in the conduct of his affairs and ministry to the faithful.
Affidavit of Rev. Monsignor Nevin J. Klinger, J.C.L. at ¶ 10. Essentially, the Diocese argues that all information in its hands is confidential under the statute.
The trial court was not satisfied with the argument offered by the Diocese. It found that the affidavit did not sufficiently establish that the information sought to be withheld fell within the statute. The trial judge did not require that the documents be turned over, instead it ordered the Diocese to produce the documents for an in camera review to determine if the privilege provided for in § 5943 was applicable.
*268 In reaching its decision, the trial court relied on previous decisions of this court which define the limitations of § 5943. In Commonwealth v. Patterson, 392 Pa.Super. 331, 572 A.2d 1258 (1990), alloc. denied, 527 Pa. 631, 592 A.2d 1299 (1991), a panel of this court held that “our legislature did not intend a per se privilege for any communication to a clergymen based on his status” and, further, the court must “look to the circumstances to determine whether [the] statements were made in secrecy and confidence to a clergyman in the course of his duties.” Id. at 343-44, 572 A.2d at 1265.
, In a case directly analogous to this matter, another panel of this court was confronted with the question of whether § 5943 could be invoked by the Diocese of Altoona-Johnstown to preclude a party from seeking documents pertaining to alleged sexual misconduct by specific priests. Hutchinson v. Luddy, 414 Pa.Super. 138, 606 A.2d 905 (1991).[3] The same canons recited in Reverend Monsignor Klinger’s affidavit were used for support in the Luddy case. The Luddy court first recognized that “insofar as the canons of the Church are in conflict with the law of the land, the canons must yield.” Id. at 145, 606 A.2d at 908 (citing St. Joseph’s Lithuanian Roman Catholic Church’s Petition, 273 Pa. 486, 492-93, 117 A. 216, 218 (1922)).
Addressing whether and to what extent the privilege set out in § 5943 applied, the Luddy court held that information protected by the statute is limited to information told in confidence to clergymen in their role as confessor or counsel- or. Id. at 146-48, 606 A.2d at 909 (emphasis supplied) (citing *269 Fahlfelder v. Com., Pennsylvania Board of Probation, 80 Pa.Cmwlth. 86, 90, 470 A.2d 1130, 1133 (1984)). “The mere fact that a communication was made to a clergyman or documentation was transmitted to a clergyman is insufficient in itself to invoke the privilege.” Id. (citations omitted).
The Luddy court ultimately affirmed the trial court’s decision to grant the discovery requests. The order by the trial court had provided that in the event an in camera review revealed that the documents were not privileged material, i.e., were not acquired by a priest and/or bishop in his role as a confessor/counselor, discovery would be required.[4] The Luddy court rejected the Church’s argument that any and all information in its secret archives automatically qualified as privileged under the statute.
We find the Luddy decision applicable to this case. The motion to quash does not set forth adequate reasons why the information sought to be withheld falls within the privilege. The supporting affidavit is so broad that it seeks to preclude from production any and all documents in the Diocese’s possession. Section 5943 does not provide such sweeping protection and the trial judge was correct in ordering the Diocese to produce the documents for an in camera inspection so that he could determine whether the privilege applies. It may be that some or all of the documents fall within the statutory privilege as it is defined in our case law. In that event, the trial court will not order production of those documents. However, it is clear that the statute does not provide blanket protection for all documents in the hands of the Diocese simply because of the Diocese’s status as a religious organization.
The other argument advanced by the Diocese is that production of the documents constitutes a violation of its constitutional right of free exercise of religion. We agree with the trial court that a claim of religious freedom may be *270 outweighed by the compelling interest of the state in pursuing the truth. The Luddy court addressed the same issue and held that the Free Exercise Clause did not prohibit an order requiring the Church to turn over documents for in camera review. After analysis of several federal cases interpreting the contours of the First Amendment and the rights of religious organizations to proceed without interference from the government, the Luddy court stated:
We hold, consistently with the decided cases, that where the only action required of a religious institution is the disclosure of relevant, non-privileged documents to an adversary in civil litigation, such action, without more, poses no threat of governmental interference with the free exercise of religion.
Luddy, 414 Pa.Super. at 152, 606 A.2d at 912. The fact that this is a criminal action does not persuade us to rule differently with respect to this issue. The rights of a criminal defendant to secure a fair trial are even more compelling than the interests involved in civil litigation. Further, we find the Diocese’s claim that production of the documents “would have a serious deleterious impact upon the whole function of the Church” to be unsupported. We therefore reject the Diocese’s free exercise argument.
After studying the record and the trial court’s opinion, we are confident that the result reached by the trial court is fair and appropriate under these circumstances. Neither the statute nor our constitutions grant the Diocese the right to withhold from production all documents in its possession. After a careful in camera review of the documents, based on both relevance and privilege, the trial court will inform the parties which documents, if any, are to be produced.
Order denying the Diocese’s motion and requiring it to produce the challenged documents for in camera review affirmed. Matter remanded for further proceedings. Jurisdiction relinquished.
POPOVICH, J., files a dissenting opinion.

. Where a previous violent act has been reduced to a conviction, the defendant may use that conviction, regardless of whether he had previous knowledge of it, to prove the violent propensities of the victim and to establish that the victim was the aggressor. See Commonwealth v. Amos, 445 Pa. 297, 284 A.2d 748 (1971).

. Section 5943 provides:
No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without the consent of such person, to disclose that information in any legal proceeding, trial or investigation before any governmental unit.
42 Pa.C.S.A. § 5943.

. The Luddy court also faced the question of whether the order at issue, a discovery order, was appealable. There, the Altoona-Johnstown Diocese requested and received from the trial court a stay of the action and certification for immediate appeal. The Luddy majority found that the order was appealable because it was collateral to the principal action, involved a right too important to be denied review, and could not be postponed until final judgment as the claimed right would be irreparably lost. See Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Pugar v. Greco, 483 Pa. 68, 394 A.2d 542 (1978).
Like the Luddy court, we find the Cohen and Pugar rationales applicable to these facts. This appeal, therefore, is properly before us.

. The Luddy court also made a series of findings with respect to relevancy and denied several of the discovery requests because they were overbroad and did not pertain to the issues in the case.