J-S81022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY S. HOSTETTER | : | |
| | : | |
| Appellant | : | No. 1069 MDA 2018 |

Appeal from the PCRA Order Entered June 8, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004778-2013

BEFORE: STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                              **FILED JUNE 04, 2019**

Appellant Jeremy S. Hostetter appeals from the Order entered June 8, 2018 denying his Petition filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-46 ("PCRA"). Appellant challenges trial counsel's stewardship. After careful review, we affirm on the basis of the PCRA Court's June 8, 2018 Opinion denying relief.

The relevant underlying facts, gleaned from the trial court's Opinion denying PCRA relief, are as follows. *See* Trial Ct. Op., filed 6/8/18. On September 22, 2013, Appellant, Marlin J. Victim ("Victim), and other friends were socializing at Victim's home in Marietta, East Donegal Township, when Appellant and Victim got into an argument over Appellant's advances towards Victim's girlfriend. Appellant returned to Victim's house a couple of hours later with two cans of gasoline, Vaseline, and dishwashing liquid, and told people on the porch that he was going to "burn yous all out." *Id*. at 2 (citing N.T.).

_____

\* Former Justice specially assigned to the Superior Court.

Appellant eventually walked away and Victim went to look for him to prevent him from returning to burn his house down in the middle of the night. *Id*. When Victim found Appellant nearby, Appellant was carrying two cans of ignitable fluid. Victim punched Appellant in the face and Appellant then doused Victim's clothing and body with the liquid. As Victim was backing away, Appellant ignited his doused clothing with a cigarette lighter. Victim suffered severe, life threatening injuries.

The Susquehanna Regional Police Department arrested Appellant immediately following the incident. Appellant told investigators that the use of deadly force was accidental on his part. He asserted that he doused both himself and Victim while the men were tussling, and Appellant's cigarette accidentally lit both men on fire. Police seized evidence from Appellant's mobile home and backyard shed pursuant to a search warrant.

On September 23, 2013, the Commonwealth charged Appellant with Attempted Murder, Aggravated Assault, and Arson-Danger of Death or Bodily Injury.[1] Appellant filed a Motion to Suppress his statements made to investigators and the evidence seized from his property.

On July 28, 2014, the court denied the Motion to Suppress after a hearing.[2] Appellant's jury trial immediately commenced. On July 30, 2014, the jury returned a verdict of guilty on all counts.

---

[1] 18 Pa. C.S. §§ 901(a), 2702(a)(1), and 3301(a)(1), respectively.

[2] At the hearing, Appellant argued only for the suppression of the evidence obtained from his home.

After ordering a Pre-Sentence Investigation, the court sentenced Appellant on October 2, 2014, to a term of 10 to 20 years' incarceration on the Attempted Murder conviction and a concurrent term of 4 to 8 years' incarceration on the Arson conviction.[3]

This Court affirmed the Judgment of Sentence, and the Pennsylvania Supreme Court denied allowance of appeal on March 30, 2016. *Commonwealth v. Hostetter*, 1844 MDA 2014 (Pa. Super. filed Sept. 25, 2015) (unpublished memorandum), *appeal denied*, 135 A.3d 584 (Pa. 2016).

On February 2, 2017, Appellant filed a timely *pro se* PCRA Petition. The court appointed counsel, and counsel filed an amended Petition on September 8, 2017, raising claims of ineffective assistance of trial and appellate counsel.

The PCRA court held a hearing on November 20, 2017, at which Appellant, trial counsel, and three potential character witnesses, who Appellant asserted were available and willing to testify at trial as to his peaceful reputation, testified. After requesting and reviewing the parties' briefs, the court denied relief in an Opinion and Order filed June 8, 2018.

Appellant timely appealed to this Court. He filed a Pa.R.A.P. 1925(b) Statement, to which the trial court filed a Rule 1925(a) Opinion, relying on its June 8, 2018 Opinion.

Appellant raises the following questions for our review:

---

[3] The Aggravated Assault conviction merged with the Attempted Murder conviction for purposes of sentencing. The court also ordered Appellant to pay restitution in the amount of $559,106.59.

- 3 -

1. Did the PCRA court err in failing to grant PCRA relief when trial counsel, having committed to self-defense as the sole defense, failed to investigate fully and to present character witnesses to prove the violent character of Mr. Victim (the complainant) and the peaceful character of [Appellant]?

2. Did the PCRA court err in failing to grant PCRA relief when trial counsel failed to request a Motion *in Limine* to preclude Mr. Victim and/or the Commonwealth from stating that Mr. Victim was "in a coma" for two to three months after the incident as this contradicted the stipulated medical testimony and the evidence provided in discovery?

3. Did the PCRA court err in failing to grant PCRA relief when trial counsel failed to address adequately the lack of a specific intent to kill?

4. Did the PCRA court err in failing to grant PCRA relief when trial counsel failed to ask the Court for competency inquiry of a drunken witness prior to his testimony and/or ask for an instruction regarding his testimony after it became evidence that he was intoxicated while testifying and had been influenced by the complainant?

5. Did the PCRA court err in failing to grant PCRA relief when the cumulative effect of each of these errors[,] coupled with the trial court's improper exclusion of testimony from [Appellant's] mother at trial[,] den[y Appellant] a fair trial and should have warranted the conviction being vacated?[4]

Appellant's Brief at 4-5.

We review the denial of a PCRA Petition to determine whether the record

supports the PCRA court's findings and whether its order is otherwise free of

_____

[4] On direct appeal, this Court concluded that the trial court erred in barring testimony from Appellant's mother regarding Appellant's physical capacity to retreat, but we concluded that the error was harmless in light of the overwhelming evidence showing that Appellant did not act in self-defense. ***See Commonwealth v. Hostetter***, 1844 MDA 2014, at 14.

legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if the record supports them. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

Each of Appellant's issues challenge the trial counsel's stewardship of his case. The law presumes counsel has rendered effective assistance, and the burden of demonstrating ineffectiveness rests with an appellant. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice. ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015. A petitioner must prove all three factors or the claim fails. ***Commonwealth v. Baumhammers***, 92 A.3d 708, 719 (Pa. 2014). Courts will not find counsel ineffective for failing to pursue a baseless or meritless claim. ***Commonwealth v. Taylor***, 933 A.2d 1035, 1042 (Pa. Super. 2007).

The Hon. David L. Ashworth of the Lancaster County Court of Common Pleas has authored a comprehensive Opinion analyzing each of the issues raised in this appeal with citation to the certified record and relevant case law. Our review of the record supports the PCRA court's findings and its Order is

otherwise free of legal error. We, thus, affirm on the basis of the PCRA court's Opinion. *See* Trial Ct. Op., filed 6/8/18, at **8-17** (concluding, *inter alia*, that (1) pursuant to case law, because there was undisputed evidence that Victim was the initial aggressor, trial counsel had no need to present character witnesses to prove the violent character of Victim; and (2) in light of Appellant's prior conviction for disorderly conduct resulting from his involvement in a physical altercation, trial counsel had a reasonable strategic basis for not presenting witnesses to testify as to Appellant's character for peacefulness); **18-19** (finding, *inter alia*, that no prejudice resulted from counsel's failure to object to Victim's use of the term "coma" to refer to his heavily-sedated condition causing some of his memory loss at trial because counsel cross-examined Victim regarding numerous inconsistencies in his testimony and argued Victim's memory loss was "selective and contrived" in his closing argument); **19-20** (concluding, with citation to specific instances as recorded in the notes of trial testimony, that Appellant's claim was without factual basis because "[t]rial counsel did adequately address the lack of specific intent to kill in his closing argument" in the alternative to his argument that Appellant's defense was self-defense); **20-21** (concluding that Appellant was not prejudiced by trial counsel's failure to request a competency inquiry of witness Jay Sheirich, who was intoxicated while testifying, or by counsel's failure to question Sheirich about alleged collusion with Victim because (1) trial counsel specifically challenged the witness's credibility due to his

intoxication several times during his closing argument; (2) there was no evidence that the witness suffered a "mental condition" or met any of the four disqualifiers provided in Pa.R.E. 601; (3) although the witness's testimony was "not in all respects a model of clarity, the weight to be given to his testimony was a matter for the jury," which was aware of the witness's intoxication and "was instructed by the court how to properly assess his credibility"); and **22-23** (noting, *inter alia*, "it is settled law that 'no number of failed claims may collectively warrant relief if they fail to do so individually.'" (internal bracket, citation omitted)).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/04/2019

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA  :
                              :
               v.             :        No. 4778 - 2013
                              :
JEREMY SPAYD HOSTETTER        :         *C*

**O P I N I O N**

BY:   ASHWORTH, J., JUNE 8, 2018

Before the Court is Jeremy S. Hostetter's amended petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. For the reasons set forth below, this petition will be denied following a hearing.

I.      **Background**

The relevant facts and the procedural history of this case may be summarized as follows. On September 22, 2013, Hostetter and his friend, Marlin J. Dyer, were involved in a physical altercation in the area of North Decatur Street and Wasp Street in Marietta, East Donegal Township, Lancaster County. Notes of Testimony (N.T.), Trial at 82, 97, 99-100, 104. During the hours prior to the incident, Hostetter was visiting with some friends at Dyer's home in Marietta. Id. at 80-88. At some point that day, Hostetter and Dyer got into an argument over Hostetter's advances towards Dyer's girlfriend, Debra Schmidt, that resulted in Hostetter leaving the residence. Id. at 88-89.

At approximately 6:30 p.m., Hostetter returned to Dyer's residence with two cans containing gasoline, Vaseline and dishwashing liquid. N.T., Trial at 269-71. Hostetter

told two friends on Dyer's porch that he intended to "burn yous all out." Id. at 270. Eventually, Hostetter walked away from Dyer's home, and Dyer went out looking for him because he could not "have him coming back and burning my house in the middle of the night." Id. at 96.

Dyer found Hostetter in the vicinity of Decatur and Wasps Streets, and a confrontation ensued over Hostetter's threats. N.T., Trial at 96-104. Hostetter, who was carrying two containers with ignitable fluid, then intentionally doused Dyer's clothing and person with the accelerant. As Dyer took steps away, Hostetter stepped forward and set the victim on fire with a cigarette lighter causing severe, life threatening injuries. Id. at 100-03, 113-14. As a result, Hostetter was charged on September 23, 2013, with attempted murder (F1), aggravated assault (F1), and arson – danger of death or bodily injury (F1).[1]

Immediately following the incident on September 22, 2013, Hostetter was interviewed twice by the Susquehanna Regional Police Department. During these interviews, Hostetter stated the use of deadly force was accidental. Specifically, Hostetter claimed that the accelerant doused both himself and Dyer while both men were tussling with each other. Hostetter went on to state that his cigarette accidentally lit both men on fire. Hostetter's claim to the police was that the use of deadly force was accidental on his part. Hostetter would later file a motion to suppress his statements made during these police interviews and the evidence seized pursuant to a search warrant for Hostetter's mobile home and back-yard shed.

---

[1]18 Pa. C.S.A. § 901(A), 18 Pa. C.S.A. § 2702(A)(1), and 18 Pa. C.S.A. § 3301(A)(1), respectively.

2

A suppression hearing was held immediately prior to trial on July 28, 2014. At that time, however, Hostetter limited his challenge to the search warrant for his home. *See* N.T., Suppression at 3-4. At the conclusion of the hearing, the motion was denied. Id. at 28. A jury trial commenced immediately thereafter on July 28, 2014, and concluded with a verdict of guilty on all counts on July 30, 2014.

Following a pre-sentence investigation, Hostetter stood for sentencing on October 2, 2014. This Court imposed a sentence of 10 to 20 years' incarceration on the criminal attempt at homicide charge and a concurrent sentence of 4 to 8 years' incarceration on the arson charge. N.T., Sentencing at 25. The aggravated assault charge merged for sentencing purposes with the criminal attempt. Id. Restitution in the amount of $559,106.59 was also ordered. Id. Hostetter was given pre-sentence credit totaling 375 days. *See* Sentencing Order. Hostetter was represented at trial and sentencing by privately-retained counsel, Robert D. Beyer, Esquire.

A timely notice of appeal to the Superior Court of Pennsylvania was filed on July 24, 2014.[2] *See* No. 1844 MDA 2014. A three-judge panel of the Superior Court affirmed the judgment of sentence in an unpublished memorandum filed on September 25, 2015.[3] *See* 2015 WL 5937654, 133 A.3d 79 (Pa. Super. Sept. 25, 2015). A timely

---

[2]Pursuant to this Court's directive, Hostetter filed a statement of errors complained of on appeal, in which Hostetter raised two issues: (1) whether "[t]he trial court erred in refusing to omit, from the recording of [Hostetter's] second recorded statement to police, [Hostetter's] statement that he did not want to answer any more questions"; and (2) whether "[t]he trial court erred when it refused to permit Robin Leed, [Hostetter's] mother, to testify that after having several hip surgeries as a child, [Hostetter] was no longer able to run, and that this physical disability continued to the present day." *See* Statement of Errors at ¶¶ 1, 2.

[3]Though the Superior Court found error in this Court's decision to bar testimony from Hostetter's mother regarding his physical capacity to retreat, the Superior Court found the error to be harmless.

3

petition for allowance of appeal was filed with the Supreme Court of Pennsylvania, *see* No. 797 MAL 2015, and denied on March 30, 2016. *See* 635 Pa. 750, 135 A.3d 584 (2016). Hostetter was represented on appeal by the Office of Public Defender, specifically, MaryJean Glick, Esquire.

On February 2, 2017,[4] Hostetter, acting *pro se*, filed a timely petition for post conviction collateral relief.[5] In this pleading, Hostetter raised two cognizable claims: (1) a violation of the Constitution which, in the circumstances of this case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; and (2) ineffective assistance of counsel which, in the circumstances of this case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

---

[4]The pleading is deemed filed on the date of mailing, February 2, 2017, rather than the date of docketing, February 6, 2017, pursuant to the "prisoner mailbox rule." **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

[5]Hostetter's PCRA petition is governed by 42 Pa. C.S.A. § 9545(b)(1), which provides that all PCRA petitions normally must be filed within one year from the date the petitioner's judgment of sentence became final. 42 Pa. C.S.A. § 9545(b)(1). For purposes of the PCRA, a judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States, or at the expiration of the time for seeking such review. 42 Pa. C.S.A. § 9545(b)(3). *See also* **Commonwealth v. Jones**, 54 A.3d 14, 17 (Pa. Super. 2012). A petitioner who seeks review in the U.S. Supreme Court has 90 days to do so after the Pennsylvania Supreme Court enters an order denying relief. **Commonwealth v. Monaco**, 996 A.2d 1076, 1081 n.2 (Pa. Super. 2010); U.S. Supreme Court Rule 13. As noted above, the Pennsylvania Supreme Court denied Hostetter's petition for allowance of appeal on March 30, 2016. Pursuant to section 9545(b)(3), his judgment of sentence became final for PCRA purposes 90 days later – on June 28, 2016 – when the time expired for Hostetter to file a petition for *certiorari* with the Supreme Court of the United States. Accordingly, Hostetter had one year from June 28, 2016, in which to file a timely PCRA petition.

4

Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, Dennis C. Dougherty, Esquire, was appointed on February 16, 2017, to represent Hostetter on his collateral claims and was granted leave to file an amended petition, if appropriate, by April 17, 2017. Upon request of counsel, Hostetter was granted an extension to retain an investigator and conduct an investigation of Hostetter's claims. *See* Order of March 30, 2017. Ultimately, on September 8, 2017, Hostetter filed an amended petition challenging the effectiveness of trial counsel and appellate counsel. The Commonwealth filed a response on October 10, 2017, conceding the need for an evidentiary hearing on Hostetter's claims.

A hearing was held on the amended petition on November 20, 2017. At that time, the Court took testimony from Attorney Robert D. Beyer, Harry Nauss, Donna Nauss, Wanda Reed, and Jeremy Hostetter. Due to a scheduling issue with two witnesses, the Court kept the record open at the conclusion of testimony on November 20, 2017. On November 29, 2017, the hearing reconvened and the Court took testimony from Sergeant Anthony Hall and Jamie Kauffman.

Briefs having been exchanged by the parties on February 23, 2018, and April 9, 2018, and a reply brief filed by Hostetter on April 24, 2018, this matter is ripe for disposition.

## II.  Eligibility for PCRA Relief

A petitioner seeking relief pursuant to the PCRA is eligible only if he pleads and proves, by a preponderance of the evidence, that (1) he has been convicted of a crime under the laws of this Commonwealth and is currently serving a sentence of

5

imprisonment, probation or parole for the crime, (2) his conviction has resulted from one or more of the enumerated errors or defects found in § 9543(a)(2) of the PCRA, (3) he has not waived or previously litigated the issues he raises, and (4) the failure to litigate the issue prior to and during trial, or on direct appeal, could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa. C.S.A. § 9543(a)(2)-(4).

A petitioner has previously litigated an issue if (1) the highest appellate court in which a petitioner could have had review as a matter of right has ruled on the merits of the issue, **Commonwealth v. Spotz**, 616 Pa. 164, 186, 47 A.3d 63, 76 (2012), or (2) the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa. C.S.A. § 9544(a); **Commonwealth v. Phillips**, 31 A.3d 317, 320 (Pa. Super. 2011). A petitioner has waived an issue if the petitioner could have raised the issue but failed to do so before trial, on appeal, or in a prior state post conviction proceeding. 42 Pa. C.S.A. § 9544(b); **Spotz**, 616 Pa. at 186, 47 A.3d at 76. However, waiver will be excused under the PCRA if petitioner can meet the conditions of 42 Pa. C.S.A. § 9543(a)(3)(ii) or (iii)[6] or by making a showing of ineffective assistance of counsel. **Commonwealth v. Morales**, 549 Pa. 400, 409, 701 A.2d 516, 520 (1997). Petitioner Hostetter has raised claims of ineffective assistance of counsel.

---

[6]Section 9543(a)(3) provides:
[T]hat the allegation of error has not been previously litigated and one of the following applies:

. . .

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.
(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.
42 Pa. C.S.A. § 9543(a)(3).

6

In order to prevail on a claim of ineffective assistance of counsel made in the post conviction context, a petitioner must overcome the presumption that counsel is effective by establishing by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) trial counsel had no reasonable basis for proceeding as he did; and (3) the petitioner suffered prejudice. *See* 42 Pa. C.S.A. § 9543(a)(2)(ii); **Spotz**, 616 Pa. at 187, 47 A.3d at 76 (*citing* **Commonwealth v. Pierce**, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987)). With respect to whether counsel's acts or omissions were reasonable, defense counsel is accorded broad discretion to determine tactics and strategy. **Commonwealth v. Fowler**, 447 Pa. Super. 534, 540, 670 A.2d 153, 155-56 (1996). The applicable test is not whether alternative strategies were more reasonable, employing a "hindsight" evaluation of the record, but whether counsel's decision had *any* reasonable basis to advance the interests of the defendant. **Commonwealth v. Chmiel**, 612 Pa. 333, 361, 30 A.3d 1111, 1127 (2011). The appellate courts will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Id. at 361-62, 30 A.3d at 1127 (*quoting* **Commonwealth v. Williams**, 587 Pa. 304, 312, 899 A.2d 1060, 1064 (2006)). Counsel cannot be ineffective for failure to pursue and preserve a meritless issue. **Commonwealth v. Rivera**, 631 Pa. 67, 108 A.3d 779, 789 (2014).

To establish the prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. **Chmiel**, 612 Pa. at 362, 30 A.3d at 1127-28. "We

7

stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." Id. (*quoting* **Commonwealth v. Paddy**, 609 Pa. 272, 292, 15 A.3d 431, 443 (2011)). Failure to establish any prong of the **Pierce** test will defeat an ineffectiveness claim. **Commonwealth v. Basemore**, 560 Pa. 258, 295 n.23, 744 A.2d 717, 738 n.23 (2000) (*citing* **Commonwealth v. Rollins**, 558 Pa. 532, 542-44, 738 A.2d 435, 441 (1999) (ordinarily, post-conviction claim of ineffective assistance of counsel may be denied by showing petitioner's evidence fails to meet any one of three prongs for claim)). Thus, where a petitioner has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone without a determination of whether the arguable merit and client's interest prongs have been met. **Commonwealth v. Wright**, 599 Pa. 270, 320-21, 961 A.2d 119, 148-49 (2008); **Commonwealth v. Zook**, 585 Pa. 11, 26, 887 A.2d 1218, 1227 (2005).

## III. Discussion

### A. Character Evidence

Hostetter first contends that trial counsel was ineffective for failing to investigate and present evidence of the victim's violent character and the peaceful character and reputation of Hostetter. *See* Amended Petition at ¶¶ 20-22. In his brief, Hostetter argues that with the sole defense being self-defense, the character of the accused and the character of the victim were important factors that the jury should have been able to consider. *See* PCRA Brief at 5.

8

To prevail on a claim of ineffectiveness for failing to call a witness, a petitioner

must prove, in addition to meeting the three **Pierce** requirements, that:

> (1) the witness existed; (2) the witness was available to testify for
> the defense; (3) counsel knew of, or should have known of, the
> existence of the witness; (4) the witness was willing to testify for
> the defense; and (5) the absence of the testimony of the witness
> was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 616 Pa. 1, 22, 45 A.3d 1096, 1109 (2012) (citations

omitted).

> To demonstrate . . . prejudice, a petitioner must show how the
> uncalled witnesses' testimony would have been beneficial under
> the circumstances of the case. Thus, counsel will not be found
> ineffective for failing to call a witness unless the petitioner can
> show that the witness's testimony would have been helpful to
> the defense. A failure to call a witness is not *per se* ineffective
> assistance of counsel for such decision usually involves matters
> of trial strategy.

Id. at 23, 45 A.3d at 1109 (2012) (internal citations and quotation marks omitted).


### 1.    Violent Character of the Victim

Hostetter claims trial counsel was ineffective for failing to introduce the

testimony of the following proffered witnesses as to the violent character and reputation

of the victim: (1) Jamie Kauffman as to the victim's reputation for violence as well as

specific threats of violence; (2) Henry Nauss as to the victim's reputation for violence;

(3) Wanda Reed as to the victim's reputation for violence, as well as specific acts of

violence; and (4) Sergeant Anthony Hall as to the victim's reputation for violence in the

police community, as well as specific acts of violence reported to the police. Generally,

evidence of a person's character is inadmissible to prove that the person acted in

9

conformity with that character or character trait on a particular occasion. *See* Pa.R.E. 404(a). However, in criminal cases, the accused may offer evidence of a victim's pertinent character trait. *See* Pa.R.E. 404(a)(2)(B).

When a claim of self-defense is properly at issue, evidence of the victim's character may be admitted (1) to corroborate the defendant's alleged knowledge of the victim's character to corroborate the defendant's testimony that he had a reasonable belief his life was in danger, and/or (2) to prove the allegedly violent propensities of the victim to show he was the aggressor, where there is an issue as to who was the aggressor. **Commonwealth v. Dillon**, 528 Pa. 417, 421, 598 A.2d 963, 964-65 (1991); **Commonwealth v. Clemmons**, 505 Pa. 356, 479 A.2d 955 (1984); **Commonwealth v. Smith**, 490 Pa. 380, 385-86, 416 A.2d 986, 988 (1980). Where, however, there is no question that the victim was the aggressor, a defendant shall not be permitted to show the victim's violent propensities through character testimony. **Dillon**, *supra* at 421-22, 598 A.2d at 965; **Clemmons**, *supra* at 367, 479 A.2d at 960-61. *See also* **Commonwealth v. Busanet**, 618 Pa. 1, 28, 54 A.3d 35, 51 (2012) (evidence of victim's violent character not admissible at trial where there was no factual issue as to who was the aggressor).

In the instant case, there was undisputed evidence that the victim was the initial aggressor. At trial, the victim, Marlin Dyer, testified that after he learned that Hostetter had made threats of burning down his home, Dyer went looking for Hostetter. N.T., Trial at 96. He had his roommate, Kelly Hake, drive him to Hostetter's residence. Id. On the way, Dyer saw Hostetter walking on the side of the road. Id. at 97. He had

10

Hake pull over and Dyer jumped out of the vehicle and started jogging toward Hostetter calling his name. Id. at 98. Hostetter ordered Dyer to "stay back, just get away." Id. Dyer nonetheless continued to advance on Hostetter. Id. at 99. Dyer was angry and screaming at Hostetter: "What are you doing, why are you going to burn my house down, what the hell's wrong with you." Id. at 99-100. When Hostetter finally turned around, Dyer punched him in the forehead. Id. at 99-100.

Dyer's roommate, Jay Sheirich, testified that after hearing about Hostetter's threat to burn down his house, Dyer exited the house shouting, "I'm going to get that son of a bitch." N.T., Trial at 277. Dyer's girlfriend, Debra Schmidt, similarly testified that Dyer was angry when he left his home in search of Hostetter. Id. at 258.

As there was no question that the victim was the aggressor in this incident, there was no need for defense counsel to prove that he was the aggressor through character or reputation evidence. See **Dillon**, *supra*; **Clemmons**, *supra*. Thus, even had trial counsel attempted to introduce such testimony, it would have properly been ruled inadmissible.

If, on the other hand, evidence of the victim's character is being offered to corroborate the defendant's alleged knowledge of the victim's violent propensities to support the defendant's reasonable belief his life was in danger, then the law requires that the specific acts of violence by the victim be known to the defendant at the time of the incident, if the acts were not reduced to a criminal conviction.[7] **Commonwealth v. Stewart**, 436 Pa. Super. 262, 264-65, 647 A.2d 597, 598 (1994), aff'd, 547 Pa. 277,

---

[7]The victim had no prior convictions.

11

690 A.2d 195 (1997). Moreover, only those past incidents of violence that are similar in nature and not too distant in time will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge. *See* **Commonwealth v. Mouzon**, 617 Pa. 527, 532, 53 A.3d 738, 741 (2012).

Hostetter argues trial counsel was ineffective for "attempt[ing] to find specific instances of conduct" to establish the violent character of the victim rather than general reputation evidence. PCRA Brief at 7. Counsel was correct in his focus given the fact that there was no dispute that the victim was the aggressor in this incident. In order to bolster the argument that Hostetter acted out of a reasonable belief his life was in danger, trial counsel concentrated on identifying specific acts of violence by the victim which were known to Hostetter at the time of the incident. N.T., PCRA Hearing at 13.

Attorney Beyer testified that his investigation into the physically violent nature of the victim revealed only one person who recalled an incident "years ago" when the victim "got in either a pushing or slapping match with this then-wife or ex-wife or girlfriend in the bar, and that was it." N.T., PCRA Hearing at 13. At some point, a victim's prior acts become too remote in time to the current incident that evidence of the earlier conduct simply has no probative value to show that the victim acted in conformity therewith or to demonstrate the reasonableness of the defendant's belief he was in danger. Thus, such evidence would have been inadmissible. Trial counsel was simply unable to "find anybody who was willing to say they saw [the victim] being aggressive and physically aggressive with anybody." Id.

Nonetheless, Hostetter claims trial counsel was ineffective for failing to present the following four witnesses to testify to the victim's violent nature.

12

### (a)  Jamie Kauffman

Jamie Kauffman was the victim's daughter-in-law.[8]  N.T., Evidentiary Hearing at 134-35.  At the PCRA Hearing, Ms. Kauffman testified that the victim had threatened violence towards her and her husband on multiple occasions.  Id. at 136; *see also* Defense Exhibit No. 2 at 1.  She further testified that it was her opinion that the victim was a violent person and that others in the community shared that opinion.  Id. at 138-39; *see also* Defense Exhibit No. 2 at 2.  However, Ms. Kauffman acknowledged on cross examination that she never saw the victim get physically violent with anyone.  Id. at 148-49.  Hostetter claims trial counsel was ineffective for failing to present this character testimony from Ms. Kauffman at trial.

In order to establish trial counsel's ineffectiveness for failing to call Ms. Kauffman, Hostetter must prove that this witness was willing to testify for the defense. **Sneed**, *supra* at 22, 45 A.3d at 1109.  Ms. Kauffman testified at the PCRA Hearing that, although trial counsel subpoenaed her for trial, she chose not to appear at the Courthouse.  N.T., Evidentiary Hearing at 135, 139, 147-48; Defense Exhibit No. 1.  Thus, Hostetter cannot prove that Ms. Kauffman was willing to testify for the defense.

Moreover, even had Ms. Kauffman agreed to testify, her testimony regarding the many verbal threats made by the victim against her family would have been inadmissible.  Ms. Kauffman conceded that she never saw the victim be physically violent toward anyone, including her family members.  N.T., Evidentiary Hearing at 148-49.  She only knew the victim to make verbal threats.  Id. at 136.

---

[8]The victim passed away in 2016.

13

In order for it to be objectively reasonable for a defendant to use force in self-defense, the defendant must reasonably believe the purported victim's use of physical force is imminent. Hostetter being aware that the victim made verbal threats against the victim's family does not make it more probable that he had a reasonable belief that his life was in danger because one cannot defend one's self from verbal threats with physical violence. See Pa.R.E. 401, 402.

### (b) Henry Nauss

Henry Nauss testified that he knew the victim and knew his reputation in the community for violence, although he had no personal knowledge of it. N.T., Evidentiary Hearing at 90-91. Mr. Nauss could not personally recount any specific instances of violence by the victim. Id. at 90. Thus, this testimony would have been inadmissible to show that Hostetter had a reasonable belief that his life was in danger.[9]

### (c) Wanda Reed

Wanda Reed is the owner of Beanie's Bar and Grill in Mount Joy. N.T., PCRA Hearing at 95. She testified as to several incidents where she personally observed the victim's violent behavior. Between 1994 and 1999, Ms. Reed witnessed the victim assault several patrons. Id. at 96-97. She specifically recalled one instance where the victim pinned a person against the wall and threatened to kill that person. Id.

---

[9]Because Hostetter chose not to testify at trial, he would have been able to establish his knowledge of the violent propensities of the victim only through other people.

14

at 97. Another time, the victim threw a man in the dumpster behind the bar. Id. The victim was ultimately banned from Beanie's Bar and Grill in 1999. Id. at 98.

As noted above, only those past incidents of violence that are similar in nature and not too distant in time will be deemed probative. See **Mouzon**, *supra* at 532, 53 A.3d at 741. The specific acts of violence testified to by Ms. Reed were 14 to 19 years prior to the incident involving Hostetter. These past acts were much too remote to be relevant, and, thus, would have been inadmissible. Moreover, there was no testimony that Hostetter had prior knowledge of these acts of violence by the victim.[10] Both of these elements are necessary to show that the victim's prior aggressiveness created a reasonable fear in Hostetter's mind for his own safety.

### (d)    Sergeant Anthony Hall

Sergeant Anthony Hall of the Susquehanna Regional Police Department testified that while he was aware of the victim's aggressive nature, he was not "privy to an incident of violence." N.T., PCRA Hearing at 127. Sergeant Hall further testified that the victim's reputation, both in the police department and by several in the community, is as a "violent, drunk alcoholic." Id. at 127-28. He reiterated on cross examination, however, that he was not personally aware of any specific violent conduct by the victim. Id. at 129. His personal opinion was based on what he had heard secondhand from the other police officers in his department and from what he read in

---

[10]Hostetter testified at the PCRA Hearing that he was aware of verbal threats made by the victim towards his mother but knew of no physical assaults by the victim. N.T., PCRA at 114.

15

three police reports relating to domestic disturbances dated June 12, 2010, January 15, 2011 and April 15, 2012. Id. at 130, 132; see also Defendant's Exhibit 9.[11] Sergeant Hall's only personal interaction with the victim was following the incident that formed the basis of this criminal action. Id. at 128. It is questionable, therefore, whether Sergeant Hall had the appropriate knowledge of the victim's reputation to testify.

### 2.    Peaceful Character of Hostetter

Hostetter further claims that trial counsel was ineffective for failing to call the following people as character witnesses to his peaceful reputation in the community: (1) Jamie Kauffman; (2) Henry Nauss; and (3) Donna Nauss. Each of these witnesses testified on behalf of Hostetter at the PCRA Hearing. Although it was Ms. Kauffman's testimony that Hostetter, whom she has known for 18 years as an employee and friend, had a reputation in the community for being peaceful, she had been unwilling to testify at trial, as evidenced above. Id. at 135, 139, 146-48. Henry and Donna Nauss, on the other hand, testified that they were available and willing to testify at trial for the defense. N.T., PCRA Hearing at 87-88, 92-93. Hostetter, however, did not prove that trial counsel knew of, or should have known of, the existence of these witnesses. **Sneed**, 616 Pa. at 22, 45 A.3d at 1109.

Attorney Beyer testified that he had conversations with Hostetter about character witnesses who would testify on his behalf. N.T., PCRA Hearing at 80-81. "[W]hoever [Hostetter] thought of we tried to contact or we did contact." Id. at 81. And, as a result

---

[11]Again, none of these complaints to the police resulted in criminal convictions as there were either no charges filed or the charges were dropped. See Defendant's PCRA Exhibit 9.

of those contacts, the defense had not one witness to testify as to Hostetter's good character. Id. Hostetter has simply not proven that trial counsel knew or should have known about Henry and Donna Nauss as character witnesses.

Moreover, Hostetter failed to establish that trial counsel lacked a reasonable basis for his inaction. A defendant asserting his allegedly peaceful character cannot avoid relevant cross-examination by the Commonwealth on his prior convictions for crimes of violence. **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1263 (Pa. Super. 2014) (*en banc*) (where the defendant presents evidence that he has a good reputation in the community and was a peaceful, law-abiding person, this opens the door and allows the Commonwealth to rebut the defendant's claims by impeaching the defendant with the prior convictions during cross-examination). In this case, Attorney Beyer testified that Hostetter had a prior conviction for disorderly conduct, which was for tumultuous and fighting behavior. **N.T.**, PCRA Hearing at 81-82; *see also* Id. at 33. Such evidence would have established that Hostetter had been in a fight before, thus, defeating his claim as a peaceful, law-abiding citizen. Id. at 82. Where counsel's chosen course had some reasonable basis, as the second prong of the test for ineffective assistance of counsel, the inquiry ends and counsel's assistance is deemed to be constitutionally effective. **Commonwealth v. Williams**, 587 Pa. 304, 311, 899 A.2d 1060, 1064 (2006). Since Attorney Beyer had a reasonable basis for not introducing character witnesses for Hostetter's alleged peaceful nature, the ineffectiveness claim lacks merit.

17

## B. Testimony Regarding Coma

Hostetter next claims trial counsel was ineffective for failing to object to the victim testifying to and the Commonwealth commenting on the fact that the victim was "in a coma" after the incident as this allegedly contradicted the stipulated medical testimony and the evidence provided in discovery. There was a stipulation entered into between trial counsel and the Commonwealth that referred to the victim's injuries, treatment, prognosis, and drug and alcohol levels. It did not mention the word "coma." *See* N.T., Trial at 427-29. *See also* Defendant's Exhibit 6.

Attorney Beyer testified at the PCRA Hearing that the victim was sedated for a long period of time during which time the victim was unable to communicate or be interviewed. N.T., PCRA Hearing at 80. He noted that the police and medical records established that the victim was not alert or able to speak for an extended period of time following the incident. Id. The defense stipulated to the serious bodily injury suffered by the victim in this case. Id. Whether the victim was in a medically-induced coma or heavily sedated to deal with the pain did not impact the level of injury to which the defense had stipulated. Id. Nor did it diminish the fact that the victim was the known aggressor in this incident.

Hostetter argues that the victim repeatedly referred to his coma and sedation after the injury in an apparent attempt to explain his lack of memory. *See, for example*, N.T., Trial at 100, 111, 118, 134. *See also* Defendant's Exhibit 8. Trial counsel's failure to object to the victim's use of the word "coma," however, did not preclude counsel from arguing the victim's lack of credibility to the jury. Attorney Beyer cross-examined the

18

victim on a number of other inconsistencies in the victim's testimony and described the victim's memory loss to the jury as "selective and contrived" in his closing. N.T., Trial at 458. Hostetter failed to prove that the outcome of the trial would have been different if trial counsel had cross-examined the victim as to whether he was actually in a coma or an extended period of sedation.

### C. Lack of Specific Intent

Hostetter further claims trial counsel was ineffective for failing to adequately address, either through cross-examination or argument, Hostetter's lack of specific intent to kill.[12] This claim is contrary to the evidence. Trial counsel did adequately address the lack of specific intent to kill in his closing arguments to the jury. N.T., Trial at 452-55.

Defense counsel repeatedly stated in his summation: "[M]ake no mistake about it, our defense is self-defense." N.T., Trial at 451, 452, 455. However, acknowledging that he "hate[d] to argue in the alternative," and that he would be "delinquent in [his] duty" to his client if he did not do so, Attorney Beyer then launched into a discussion of the facts of the case relative to the attempted murder charge. Id. at 453-54. Defense

---

[12]Hostetter was charged with the crime of criminal attempt at homicide. The crime of criminal homicide is defined as "**(a) Offense defined.**—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa. C.S.A. § 2501(a). The crime of criminal attempt is defined as "**(a) Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). To prove criminal attempt-criminal homicide, the Commonwealth must establish that a substantial step was taken with the specific intent to kill. *See* **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005).

19

counsel repeatedly argued there was no specific intent to kill by Hostetter:

> . . . [U]nder those circumstances, when all heck is breaking loose around him, even though a couple of seconds may have passed, I respectfully suggest [Hostetter] did not form the intent to kill.
>
> . . .
>
> [Hostetter] wasn't intending to kill anybody, [Hostetter] was trying to save his own neck. He was protecting himself. He was defending himself. He wasn't intending to kill anybody.
> I respectfully suggest that even if you reject the defense of self-defense and, like I said, make darn sure about it, that is our defense; but if you would reject it, that you still must find [Hostetter] not guilty of the criminal attempt at homicide.

Id. at 545-55. The jury clearly heard defense counsel's argument regarding lack of specific intent and rejected it. Thus, this claim lacks merit. Moreover, there is no indication that had Attorney Beyer belabored the point with the jury the outcome of the trial would have been different. As Hostetter has failed to prove prejudice, this claim should be denied.

### D.    Competency Inquiry of Witness Jay Sheirich

Hostetter argues trial counsel was ineffective for failing to ask the Court for a competency inquiry of Jay Sheirich prior to his testimony and/or to ask for an instruction regarding his testimony after it became evident that he was intoxicated while testifying and had been influenced by the victim, Marlin Dyer. As a general rule, every person is presumed competent to be a witness. Pa. R.E. 601(a).

> A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
> (3) has an impaired memory; or
> (4) does not sufficiently understand the duty to tell the truth.

20

Pa. R.E. 601(b). There was no evidence introduced that Sheirich suffered from a mental condition or that he met any of the four disqualifiers due to his intoxication.

A witness's competence presents a question for the trial court's discretion. *See* **Gould v. Crawford**, 2 Pa. 89 (Pa. 1845) (holding that whether an intoxicated witness is competent is in the discretion of the court). There was nothing in the record to indicate that Sheirich's testimony was incoherent. Nor was there any indication that Sheirich had an impaired memory or was incapable of understanding his duty to tell the truth. N.T., Trial at 280.

A witness is not incompetent *per se* merely because it is established that the witness drinks. **Commonwealth v. Abrams**, 443 Pa. 295, 302, 278 A.2d 902, 906 (1971). *See also* **Gebhart v. Shindle**, 15 Serg. & Rawle 235 (Pa. 1824) (it is no objection to a witness's competency that he is an habitual drunkard). While Sheirich's testimony was not in all respects a model of clarity, the weight to be given to his testimony was a matter for the jury. **Commonwealth v Farrell**, 319 Pa. 441, 444, 1818 A. 217, 218 (1935) ("The use of narcotics may impair mind and memory, but the extent of the impairment is for the jury's measurement.").

This Court adequately instructed the jury on assessing the credibility of witnesses. N.T., Trial at 513. Trial counsel specifically challenged Jay Sheirich's credibility, due to his intoxication, several times during his closing statement to the jury. Id. at 455, 470. Thus, the jury was made aware of Sheirich's intoxication and was instructed by the Court how to properly assess his credibility. Hostetter's claim regarding Sheirich's competency lacks merit.

21

Hostetter also claims that Sheirich's testimony was influenced by the victim. There was no evidence of collusion between these two witnesses to lie, or evidence of undue pressure by the victim upon his roommate, Sheirich, to testify in the victim's favor. Sheirich was not present at the time when the victim was set on fire and did not testify to anything about whether the incident was the result of self-defense or not – the central issue in this trial. Hostetter has failed to prove that there is a reasonable probability that the outcome of the trial would have been different had trial counsel cross-examined Sheirich regarding the victim's alleged influence over him.

### E.    Cumulative Error

Finally, Hostetter contends the cumulative effect of each of his alleged errors coupled with this Court's improper exclusion of testimony by the victim's mother denied Hostetter a fair trial. I found no errors with respect to Hostetter's claims regarding a lack of character evidence, failing to object to the use of the word "coma" by the victim and the Commonwealth, failing to adequately address the lack of specific intent to kill, and failing to request a competency inquiry of Jay Sheirich. It is settled law that "no number of failed [ ] claims may collectively warrant relief if they fail to do so individually." **Spotz**, 616 Pa. at 273, 47 A.3d at 129 (citation omitted). This principle, however, applies to claims that fail because of lack of merit or arguable merit. "When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." Id.

Hostetter's only individual claims that have failed due to lack of prejudice are his challenges to trial counsel's failure to attack the victim on credibility with his

22

exaggerated claims of "coma" and failure to question Sheirich regarding his apparent collusion with the victim and/or intimidation by the victim. "[W]hile cumulative prejudice may properly be assessed with respect to individual claims that have failed due to lack of prejudice," the defendant must still set forth "a specific, reasoned, and legally and factually supported argument for the claim." **Spotz**, *supra*. Hostetter has set forth no reviewable claim, and he is entitled to no relief.

## IV.    Conclusion

For the reasons set forth above, Jeremy Spayd Hostetter's amended motion for post-conviction collateral relief will be denied.

Accordingly, I enter the following:

23